**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

|  |  |  |
|---|---|---|
| | ) | |
| Sussex County Federal Credit Union, | ) | C.A. No. 11887-MA |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| Henry J. Evans, Sr., and Rosa Evans, | ) | |
| Defendants. | ) | |

**MASTER'S REPORT**

Date Submitted:  September 20, 2016
Draft Report:  December 20, 2016
Final Report:  January 6, 2017

In 2002, a couple deeded two acres of their 28-acre parcel to their son and daughter-in-law.  Several months later, their son and daughter-in-law borrowed $195,000 from a credit union in order to construct a new house on their two acres. The loan was secured by a mortgage on their property.  After taking out a second mortgage and obtaining a mortgage modification, the son and daughter-in-law defaulted on their payments.  After initiating foreclosure proceedings in 2014, the credit union discovered that the house straddled the boundary line between the son and daughter-in-law's property and the adjacent property owned by the parents.  In 2015, the credit union purchased the foreclosed property for $1,000 at a sheriff's sale. The credit union is now seeking to reform the 2002 deed executed by the parents. The proposed reformation would: (a) redraw the boundary lines to include the house

as built within the credit union's property, and (b) redraw the boundary lines to give the parents some of credit union's acreage in exchange. The parents oppose reformation, contending that it would be unconscionable and against public policy to take real property from them when they have done nothing wrong in order to compensate the credit union for its own mistakes. Pending before me is a motion for summary judgment filed by parents. For the reasons that follow, I recommend that the Court grant summary judgment in favor of the parents, but deny their request for an award of attorney's fees and costs.

Factual Background

In 1969, Defendants Henry J. Evans, Sr. and Rosa Evans, his wife, purchased two adjacent lots, totaling approximately 28 acres, near Milton, Delaware.[1] Evans, Sr. wanted a large parcel of land as a place where his extended family could live.[2] The original parcel was shaped like a square and landlocked on three sides. The fourth side bordered Sussex County Route 319, commonly known as Sand Hill Road.[3]

In early 2002, Defendants gave "two acres" of their land to their son, Henry J. Evans, Jr., and his wife, Maribeth Evans, for the purpose of building a house.[4] Defendants allowed the younger couple to select the land they wanted on their

---

[1] Def. Op. Brief, Ex. A.
[2] *Id.*, Ex. C (Deposition of Henry J. Evans, Sr. at 10).
[3] *Id.*, Ex. G.

parents' parcel.[5]  Evans, Jr. and his wife selected a 2.119 acre parcel of land shaped like a jug, which nearly bisected Defendants' property.[6]  A 2015 survey shows a driveway called Tobacco Road running approximately 500 feet along the "jug handle" of the 2.119 acre parcel.[7] Tobacco Road then turns and runs a short distance past a derelict building over land owned by Defendants.[8]  Even though Evans, Jr. could have extended Tobacco Road further along the "jug handle" to avoid crossing Defendants' property, Evans, Jr. did not do so.  Instead, after his house was constructed, Evans, Jr. drove across a portion of his parents' land to access the backyard of his house.[9]  Evans, Jr. also used an old well that was located near the derelict building to run water to his new house.[10]  Defendants were aware that their son drove across their land and had a line to the well, but viewed it as a "family situation."[11]

---

[4] *Id.*, Ex. C (Deposition of Henry J. Evans, Sr., at 10).
[5] Pl. Ans. Brief (Deposition of Rosa Evans at 31).
[6] Def. Op. Brief, Ex. K.  *See also* Ex. D.
[7] Def. Op. Brief, Ex. K.
[8] In 2006, Defendants gave approximately two acres of their remaining land to their daughter, Kia Lynn Evans-Watson.  Def. Op. Brief, Ex. F.  A minor subdivision plan shows that the daughter's parcel is shaped like a mirror image to the property now owned by SCFCU, but runs along the southern edge of Defendants' parcel where a second driveway ("Plantation Road") provides access to the daughter's house.  Def. Op. Brief, Ex. G.
[9] Def. Op. Brief, Ex. C (Deposition of Henry J. Evans, Sr. at 37).
[10] *Id.* at 22.
[11] *Id.* at 37.

The 2.119 acre parcel was conveyed to Evans, Jr. and his wife by deed executed by Defendants on January 30, 2002 ("the 2002 Deed").[12]  On October 31, 2002, Evans, Jr. borrowed $195,000 from Plaintiff Sussex County Federal Credit Union ("SCFCU"), and executed a construction mortgage encumbering their 2.119 acres with "improvements now or hereafter erected on the property" as security for the loan.[13]  They subsequently borrowed another $47,791 from SCFCU on September 5, 2008, secured by a second mortgage on their property, and on July 16, 2012, they executed a mortgage modification agreement with SCFCU.[14]  However, Evans, Jr. and his wife were unable to make payments under the mortgage modification agreement, and SCFCU initiated mortgage foreclosure proceedings in the Superior Court on April 30, 2014.[15]  On October 16, 2014, Evans, Jr. and his wife filed an emergency motion for stay of execution and sale, alleging that a survey completed that same date showed that the house was situated across the boundary line of the property and the adjacent property owned by Defendants.[16]  With knowledge of this title defect, SCFCU purchased the property for $1,000 at a sheriff's sale conducted on April 24, 2015.[17]

---

[12] Def. Op. Brief, Ex. E.
[13] Def. Op. Brief, Ex. I.
[14] Def. Op. Brief, Ex. J.
[15] Def. Op. Brief, Ex. L.
[16] Def. Op. Brief, Ex. M.
[17] Def. Op. Brief, Ex. N.

A survey prepared for SCFCU on July 13, 2015, shows that two-thirds of the house that was constructed by Evans, Jr. and his wife is located on land owned by Defendants.[18] By letter dated September 29, 2015, Defendants informed SCFCU that they were relinquishing any right or interest they might have in the house or the well encroaching on their property, and authorized SCFCU to enter onto their land and relocate or remove the encroachments.[19] SCFCU then filed this complaint against Defendants on January 11, 2016.

Issues

In their motion for summary judgment, Defendants argue that since they conveyed Plaintiff's property to their son and daughter-in-law before Plaintiff's original loan or the construction of the house, and since they were not involved with the loan or the construction of the house, there is no basis for an equitable modification of the boundary lines separating the two properties. According to Defendants, equity cannot modify unambiguous property lines called out in a deed without causing mischief.[20] Defendants also argue that Plaintiff has brought this action in bad faith because Plaintiff admits that it has the ability and authority to relocate the house and admits that it has never relied upon any agreement, promise or

---

[18] Def. Op. Brief, Ex. K.
[19] Def. Op. Brief, Ex. P.
[20] Def. Op. Brief, at 12 (citing *Martin v. Turner*, 2009 WL 4576228, at *2 (Del. Ch. Nov. 23, 2009) (Master's Final Report)).

assurance by Defendants. As a result, Defendants are seeking an award of attorney's fees for having to defend a meritless action.

Plaintiff opposes summary judgment, arguing that reformation of a deed is an appropriate equitable remedy where it can show a unilateral mistake accompanied by knowing silence by Defendants. According to Plaintiff, Defendants intended to convey to their son and daughter-in-law two acres of land upon which they would build their house. The deed executed by Defendants does not conform with their intent because the house straddles both properties. Furthermore, Defendants had constructive notice of the property boundaries from the recorded deed, and actual knowledge of the location of the house and its encroachment on their property because they had consented to their son's use of the well on their property and allowed their son to drive across their land. According to Plaintiff, Defendants only broke their silence as to these encroachments when Plaintiff purchased the property. As successor in interest, Plaintiff argues that it has the same rights as the original grantee to seek equitable reformation of the deed. Finally, Plaintiff argues that there is no basis for an award of attorney's fees because it has not ignored "longstanding and clear legal precedent" as Defendants now claim, nor has it brought suit to coerce Defendants.

Analysis

A motion for summary judgment may be granted if no genuine issue of material fact is in dispute and the moving party is entitled to judgment as a matter of law.[21]  The burden is on the moving party to establish that there are no issues of material fact,[22] and the court must review all evidence in the light most favorable to the non-moving party.[23]  Once the moving party has met its burden to show no material facts exist, the nonmoving party must submit "specific facts showing that there is a genuine issue for trial to survive a motion for summary judgment."[24]

Plaintiff is seeking reformation of the 2002 Deed to effectuate the original intent of the parties to the agreement, which Plaintiff contends was to provide Defendants' son and daughter-in-law with property upon which their house would be built.  According to Plaintiff, the 2002 Deed did not achieve that objective because the house was mistakenly built straddling the boundary line between Defendants' property and what is now Plaintiff's property.  However, Plaintiff misconstrues the equitable doctrine of reformation.  In order to reform a deed, there must be "a showing of a mutual mistake or, in appropriate cases, unilateral mistake on plaintiff's

---

[21] Ct. Ch. R. 56.
[22] *Scureman v. Judge*, 626 A.2d 5, 10 (Del.Ch. 1992).
[23] *Id.* at 10-11.
[24] *In re Novell, Inc. S'holder Litig.*, 2014 WL 6686785, at *6 (Del.Ch. Nov. 25, 2014) (quoting *Goodwin Live Entm't, Inc.*, 1999 WL 642565, at *5 (Del.Ch. Jan. 25, 1999), *aff'd,* 741 A.2d 16 (Del. 1999)).

part coupled with knowing silence on defendant's part."[25]  In deed reformation cases, the mistake relates to the description in the deed, and the fundamental question is: what is the property that was actually conveyed?  If the property as described in the deed is not what the parties intended to be conveyed, then the erroneous contract may be reformed.

Here, the record includes a survey dated May 16, 2001, which was prepared for Evans, Jr. by Coast Survey, Inc. and recorded in the Office of the Register of Deeds in and for Sussex County as a "Lot Partition."[26]  The Defendants allowed their son and daughter-in-law to select their own land within the 28-acre original parcel, and their selection is evidenced by the 2001 Survey.  The 2001 Survey also served as the basis for the metes and bounds description prepared by the law firm that drafted the 2002 Deed conveying the 2.119 acre property from the Defendants to their son and daughter-in-law.[27]  A comparison of the two documents shows that the distances and directions called out in the 2001 Survey and in the 2002 Deed are identical.  The only reasonable inference to be drawn from this evidence is that the property described in the 2002 Deed is the property that the parties intended to be conveyed.  Since there was no mistake, either mutual or unilateral, as to what property was being conveyed in the 2002 Deed, there is no equitable basis for this Court to reform the 2002 Deed.

---

[25] *Collins v. Burke*, 418 A.2d 999, 1002 (Del. 1980) (citations omitted).
[26] Def. Op. Brief, Ex. D.

Several months after the property was conveyed to Evans, Jr. and his wife, they borrowed money from Plaintiff and began construction on their new house. For unknown reasons, the new house was built partially on the Defendants' property. If this was the result of a mistake by Evans, Jr. or his contractor or surveyor, it was, nevertheless, a mistake that occurred several months after the conveyance of the land. Defendants testified in their depositions that they were not involved in the construction of the house and were unaware that the house was encroaching on their property until the foreclosure proceedings began.[28] Nor can the Court reasonably infer from Defendants' knowledge that their son was using their well and driving across their land to access his house that Defendants also knew their son's house encroached on their land.

In the absence of any mistake in the written contract, there is no equitable basis for reforming the 2002 Deed. Accordingly, I recommend that the Court grant summary judgment in favor of Defendants. Defendants are seeking reasonable attorneys' fees under the bad faith exception to the American Rule. The facts of this case are unusual. Even though Plaintiff has the capacity and authority to relocate the house onto its property, I do not find Plaintiff's decision to litigate this matter to be so

---

[27] Def. Op. Brief, Exs. D & E.
[28] Def. Op. Brief, Ex. C (Deposition of Henry J. Evans, Sr. at 21-22); Pl. Ans. Brief (Deposition of Rosa Evans at 31, 33).

egregious as to warrant shifting fees. Therefore, I recommend that the Court deny Defendants' request for their reasonable attorneys' fees.

Conclusion

For the reasons stated above, I recommend that the Court grant summary judgment in favor of Defendants Henry J. Evans, Sr. and Rosa Evans, and dismiss the complaint to reform a deed filed by Plaintiff Sussex County Federal Credit Union. I also recommend that the Court deny Defendants' request for an award of attorney's fees.

Respectfully,

/s/ Kim E. Ayvazian

Kim E. Ayvazian
Master in Chancery

KEA/kekz