Albert F. PETERS, Petitioner Below, Appellant,

v.

Thomas P. ROBINSON, Thomas P. Robinson, Jr., and Robert H. Robinson, Respondents Below, Appellees.

Supreme Court of Delaware.

Submitted: Dec. 21, 1993.
Decided: Jan. 27, 1994.

Stephen P. Ellis (argued), and Lynn O'Donnell of Sergovic & Ellis, P.A., Georgetown, for appellant.

Eric C. Howard of Wilson, Halbrook & Bayard, Georgetown, for appellees.

Before VEASEY, C.J., WALSH, and HOLLAND, JJ.

HOLLAND, Justice:

This is an appeal from a final judgment entered by the Court of Chancery which partitioned certain real property in kind. The petitioner-appellant, Albert F. Peters ("Peters"), was devised a life estate in an undivided one-third interest in the real property, as a tenant in common with the respondent-appellee, Thomas P. Robinson, Sr. ("Thomas, Sr."), and Robert H. Robinson ("Robert"), who is not a party in this appeal. The respondent-appellee, Thomas P. Robinson, Jr. ("Thomas, Jr."), was devised a fee simple vested remainder interest in an undivided one-third share upon Peters' death.[1]

In this appeal, Peters acknowledges that the Court of Chancery properly partitioned the property in kind into three parts. Peters contends, however, that the Court of Chancery erred by not ordering the one-third share of the real property to which his life estate attached to be either sold or partitioned further. The Court of Chancery held that the owner of a life estate may not compel a partition sale against the holder of a remainder interest. We have concluded that the judgment of the Court of Chancery should be affirmed.

*Facts*

In 1958, Margaret Robinson Peters ("Margaret") and her two brothers, Thomas, Sr. and Robert, inherited certain real property from their uncle, John Houston. That property was an approximately 410 acre farm north of Lewes, in Sussex County, Delaware (the "Houston Farm"). The three siblings owned the Houston Farm as tenants in common, each owning an undivided one-third interest in fee simple.

In 1978, Margaret married Peters. Margaret died in 1986. She specifically devised her interest in the Houston Farm as follows:

> Should I predecease my husband, I bequeath to him a life estate in all of my right, title and interest in the property known as the "John Houston Farm" on the east side of Delaware Route 1, north of Lewes, Delaware. It is my intention by this life estate that he have the full usage of my share of this property and/or the rents or profits accruing therefrom. At the death of my husband, or should my husband predecease me, I leave this property absolutely and in fee to Thomas Peter Robinson, Jr., my nephew.

Thus, following Margaret's death, the ownership of the Houston Farm was as follows: Robert, an undivided one-third tenancy in common fee simple interest; Thomas, Sr., an undivided one-third tenancy in common fee simple interest; and an undivided one-third tenancy in common interest in which Peters owned a life estate and Thomas, Jr. owned a vested remainder in fee simple.

Peters filed a Petition for Partition of the Houston Farm. He was apparently dissatisfied with the income he was receiving from

---

1. The record reflects that prior to the hearing in the Court of Chancery, Peters, Thomas, Sr. and Thomas, Jr. executed a deed to Robert for a fee simple interest in a specific portion of the real property in consideration for his relinquishment of any claim to the balance. The deed to Robert was identical to the portion of the real property assigned to Robert "in kind" by the Court of Chancery's order of partition.

the farm. Peters' petition alleged that the parties were unable to agree upon a division of the property. The petition requested the Court of Chancery to order a sale of the Houston Farm and to apportion the proceeds between Peters, Thomas, Sr., Thomas, Jr., and Robert.

The Court of Chancery held a hearing on June 23, 1992. The uncontroverted testimony in the record reflects that by the time of the hearing the parties had agreed that the Houston Farm could be physically divided into three parts of equal value. Peters' trial attorney made the following remarks in his opening statement:

> The property which the Court is considering in this case is a 409 acre farm.... [T]he scales certainly tip in favor of an allocation in kind of a ⅓ portion to the respondent Robert Robinson and the respondent Thomas P. Robinson [Sr.]. In fact, the parties have already agreed to allocate a ⅓ portion to Robert Robinson. And Thomas Robinson [Sr.] has also requested a ⅓ portion to be allocated to him, which is acceptable to the petitioner.

According to Peters' trial attorney, the purpose of the Chancery hearing was limited:

> The real issue for the Court to determine in this case is what happens to the ⅓ allocated to the petitioner, Albert Peters and Thomas Robinson, Jr., who is—who holds the remainder interest after Albert Peters.

．　．　．　．　．

The respondents insist that the allocation to Albert Peters require him to accept a life interest in that ⅓ portion on the front left, with the remainder interest to Thomas, Jr.

The record reflects that Thomas, Sr. and Thomas, Jr. argued to the Court of Chancery that after the Houston Farm was divided into three parts pursuant to the parties' agreement, Peters' life interest and Thomas, Jr.'s remainder interest should simply attach to that portion of the property assigned to them. Peters opposed that in kind allocation. Instead, Peters' attorney stated that, following the hearing, he wanted the Court of

Chancery to partition the Houston Farm in the following manner:

> [W]e will request that the Court in fact divide in kind a ⅓ portion requested by Robert, the ⅓ portion requested by Thomas Robinson, Sr., and sell the ⅓ portion allocated to the petitioner and Thomas Robinson, Jr.

At the hearing, Peters' testimony confirmed the representations of his attorney. Peters testified that the parties had agreed upon a physical division of the Houston Farm to eliminate the co-tenancy, whereby Robert would receive one-third in fee and Thomas, Sr. would receive one-third in fee. However, Peters testified that with respect to the disposition of the remaining one-third, the parties disagreed. He wanted that parcel to be sold and the proceeds divided between himself and Thomas, Jr. Alternatively, Peters requested that the remaining one-third share of the Houston Farm be physically divided so that a portion of that share was conveyed to him in fee and a portion was conveyed to Thomas, Jr. in fee.

The Court of Chancery concluded that the Houston Farm should be partitioned in kind pursuant to the parties' agreement. However, the Court of Chancery held that Peters was not entitled to compel the elimination of Thomas, Jr.'s remainder interest by a partition proceeding. Accordingly, the final partition decree divided the Houston Farm into three parts, but did not eliminate the successive ownership interest of Thomas, Jr. by either ordering a sale or a further partition in kind.

### Partition Proceedings
### Origin and Purpose

Partition was an equitable remedy under English law and retains that character under Delaware law. 25 *Del.C.* § 751. Partition developed originally under the English common law as a remedy to co-parceners. *See generally* 4A Powell, *The Law of Real Property* ¶ 607[3] (Rohan, ed. 1993). The purpose of partition was to permit co-tenants to sever concurrent undivided interests in the same real property. *Id.* As the common law evolved, the equitable remedy of partition

was extended to joint tenants and tenants in common. *Id.*

Delaware, like most states, has enacted a partition statute. 25 *Del.C.* § 701 *et seq.* *See* 4 Thompson, *Commentaries on the Modern Law of Real Property* § 1822, at 277 (1979). The Delaware partition statute is substantially a codification of the common law:

> [T]he ancient jurisdiction of the court of chancery to order partition between tenants in common is not affected by the statute law of the state, where, in adjudicating between parties holding *joint interests* in law, it will promote the several interests of the litigants that partition should be made.

*Bradford v. Robinson,* Del.Err. & App., 30 A. 670, 672 (1884) (emphasis added).

### Partition Proceedings
### Concurrent Interests Severed

■ Partition means a severance of interests which are concurrent. 1 *American Law of Property* § 4.96 (1952). Such types of contemporaneous co-ownerships are usually either joint tenancies or tenancies in common. *Id.* The purpose of a partition proceeding is to eliminate a present concurrent interest in the same property so that each owner may enjoy and possess his or her interest in severalty. *Dixon v. Dixon,* 189 Neb. 212, 202 N.W.2d 180, 181 (1972). *See Pleasanton v. Bell,* Del.Supr., 1 Del.Cas. 511 (1814).

The Delaware partition statute recognizes the common law equitable right to sever concurrent ownership interests in the same real property. 25 *Del.C.* § 721(a). *See Knight v. Knight,* Del.Ch., 89 A. 595 (1914). The Delaware statute also recognizes that partition may be had notwithstanding the fact that the concurrent ownership interest held "by any parcener, joint tenant or tenant in common may be for less estate than a fee." 25 *Del.C.* § 721(c). Accordingly, Peters had standing to petition for partition of the Houston Farm in order to sever the concurrent ownership of his life interest from the fee simple interests owned by Robert and Thomas, Sr.

■ The Delaware partition statute recognizes the unique nature of real property. Consequently, the Delaware statute continues the common law preference for a physical, in kind, division of the real property that makes "a just and fair partition thereof amongst the parties." *Id.* § 724. The Delaware statutory scheme expressly provides that an order to sell the real property becomes appropriate *only after* the Court of Chancery determines that "a partition of the premises would be detrimental to the interests of the parties entitled." *Id.*

In this case, the parties waived the appointment of commissioners and agreed that the Houston Farm could be equitably divided in kind into three parts of equal value. *See id.* The Court of Chancery properly granted Peters' petition for partition by ordering the Houston Farm to be divided in kind. *Id.* § 721. Concurrent ownership of the Houston Farm was eliminated: Peters then owned a life estate in a specified one-third share of the Houston Farm; Thomas, Jr.'s remainder interest was assigned exclusively to that same portion of the Houston Farm; and Thomas, Sr. and Robert each owned separately designated one-third shares of the Houston Farm in fee simple.

### Partition Proceedings
### Severance of Successive Ownerships

The Court of Chancery held that, although he only owned a life estate, Peters was entitled to compel a partition of the Houston Farm because he held that life estate concurrently in an undivided one-third interest as a tenant in common with Thomas, Sr. and Robert. *See* 25 *Del.C.* § 721(c). Peters argues that after the Court of Chancery partitioned the Houston Farm in kind into three parts, it erred by not further partitioning or ordering a sale of the parcel to which his life interest had been assigned. Thus, the dispositive issue in the case *sub judice* is whether Peters' right to compel partition extends to the remainder interest held by Thomas, Jr.

■ Peters' argument raises a question of apparent first impression in Delaware. However, the answer is well-established by

the common law. It has already been noted that at common law the historical purpose of a partition proceeding was to permit co-tenants to sever concurrent ownership interests. *See* Simes & Smith, *The Law of Future Interests* § 1769 (2d ed. 1956). Conversely, in the absence of concurrent ownership, partition could not be had at common law between owners in severalty of successive estates. *Id. See also* 2 *American Law of Property* § 6.23, at 101.

Successive owners, such as those holding a life estate and the remainder interest, are not co-tenants and "[t]here is no possibility of them ever being entitled concurrently to possession of the same piece of land." *Barden v. Pappas,* Fla.App., 532 So.2d 707, 709–10 (1988).[2] Consequently, the general rule at common law was that a life tenant could not maintain a partition proceeding against persons who owned the remainder interest. 4 Thompson, *Commentaries on the Modern Law of Real Property* §§ 1822, 1824. Therefore, as a matter of common law, life tenants were not entitled to seek partition against holders of remainder interests. Simes & Smith, *The Law of Future Interests* §§ 1764, 1769. *See, e.g., Dixon v. Dixon,* 189 Neb. 212, 202 N.W.2d 180, 181–82 (1972). The common law rule has been summarized as follows:

> Partition involves primarily the idea of a severance of concurrent ownership, not the severance of successive ownerships. Certainly the common-law notion is that the parties are to be permitted to enjoy the possession in severalty; but it does not include a mere severance of title, where joint possession of enjoyment is not involved. And, if the applicable partition statute gives the power to partition only to possessory owners, it seems clear that the statutory provision for partition still, in the main, proceeds upon this common-law doctrine. Thus, if Blackacre is given to A for life, with reversion or remainder to B in

fee, A cannot succeed in an action for partition as against B.

*Dixon v. Dixon,* 202 N.W.2d at 181–82 (quoting Simes & Smith, *The Law of Future Interests* § 1769).

Similar statements of the rule are found in the American Law of Property: "As partition can be had only between cotenants, it goes without saying that partition cannot be had between owners in severalty of ·successive estates such as a life tenant and a reversioner or remainderman in fee."

*Id.* (quoting 2 *American Law of Property* § 6.23, at 101).

An example provided in Section 126 of the Restatement of the Law of Property illustrates that the partition decree entered by the Court of Chancery, pursuant to Peters' petition, was completely in accordance with the general common law rule:

> A, owning Blackacre in fee simple absolute, transfers Blackacre "as an undivided one-half interest therein to B and his heirs and as to the other undivided one-half interest therein to C for life, remainder to D and his heirs." C has the power to compel the partitioning of Blackacre and in a case where Blackacre is physically divisible, this partition operates so that B acquires an estate in fee simple absolute in the specific land allotted to him, and C and D acquire, respectively, an estate for life and a remainder estate in fee simple absolute in the balance of Blackacre.

*Restatement of the Law of Property* § 126 illus. 1 (1936).

### Delaware Retains Common Law Life Tenant's Partition Proceedings

Absent specific statutory authorization, the general common law rule is the law of Delaware: a life tenant is not entitled to maintain partition against the holder of a remainder interest. 25 *Del.C.* § 751. *See* 59A Am.

---

2. The principle has been stated as follows:
   Partition means a severance of interests which to some extent at least are concurrent. It refers to such types of co-ownerships as tenancies in common and joint tenancies. It is true that, if land is conveyed to A for life, remainder

to B in fee, A and B have interests in the same land, and in a sense may be said to be co-owners. But it is not the sort of co-ownership to which partition has been applied.

1 *American Law of Property* § 4.96, at 568.

Jur.2d *Partition* § 33 (1987); 4 Thompson, *Commentaries on the Modern Law of Real Property* § 1824, at 293. *See also Restatement of the Law of Property* §§ 126, 172 (1936 & Supp.1992). The principal Delaware authority relied upon by Peters in arguing for a departure from the general common law rule is distinguishable from the present case. *Parker v. Parker*, Del.Ch., C.A. No. G–104, Berger, V.C., 1985 WL 149628 (Sept. 5, 1985). Moreover, the holding in *Parker* is consistent with the general common law rule. *Id.*

In *Parker*, the petitioner, like Peters, held a life estate in certain real property as a tenant in common. The Court of Chancery determined that the real property at issue in *Parker* could not be equitably partitioned in kind. Therefore, the real property in *Parker* was ordered to be sold to eliminate the concurrent co-tenancies. *See* 25 *Del.C.* § 721(c).

The sale of the real property in *Parker* had the effect not only of severing the life estate from the other concurrent co-tenancies, but also of changing the nature of the successive remainder interest from realty to personalty. *See id.* Therefore, in *Parker*, the Court of Chancery did not have to consider whether, in the absence of a concurrent ownership interest, the holder of a life estate could compel partition as against the holder of a remainder interest. By contrast, the Houston Farm in the case *sub judice* was capable of being partitioned in kind. Consequently, Peters' co-tenancy could be severed from the concurrent ownership interests of Thomas, Sr. and Robert without the necessity of also severing his life estate from the successive remainder interest of Thomas, Jr.

■ The general common law rule, which prohibits a partition of successive interests only, is retained by Delaware's partition statute. 25 *Del.C.* § 737.[3] Section 737 provides that real estate shall not be partitioned until the determination of any life estate unless (i) the holder of the life estate and at least one other party joins in the petition, or (ii) the

life estate is in an undivided share of the parcel. *Id.* In this case, the Court of Chancery properly held that Delaware's statutory limitations on the right to partition by a life tenant reflect the common law rule. *See Ex parte Burgess*, Del.Ch., 1 Del.Ch. 233, 237–39 (1822).

In Delaware, the holder of a life estate is allowed to compel partition no further than is necessary to sever the concurrent co-tenancy. 25 *Del.C.* §§ 721(c), 737. The Court of Chancery severed Peters' concurrent ownership interest as a tenant in common by partitioning the Houston Farm into three parts. Peters has no statutory or common law right to *compel* further partition of the one-third share to which his life estate was assigned in order to sever it from Thomas, Jr.'s successive remainder interest.

### Conclusion

The final judgment of the Court of Chancery, in the form of an in kind decree of partition, is affirmed.

---

**3.** Most states, like Delaware, which have adopted partition statutes have also codified the general common law rule, since "[a] statute which provides a cause of action for partition or commutation of a life estate created by will or deed would

serve to thwart the intent of the testator or grantor." *Staggs v. Staggs*, 277 Ark. 315, 641 S.W.2d 29, 30–31 (1982). *See also Williams v. Nebraska Wesleyan Univ.*, 214 Neb. 92, 332 N.W.2d 694, 695 (1983).