Judge Dennis R. Bagneris, Sr.
11 This appeal involves the ownership of a beloved pet, Abby, and the related issues of support and care.. Following a two-day bench trial on the merits, the First City Court found in favor of plaintiff-appellee, Bruce Macon Moore, and awarded him the use and management of the co-owned dog, Abby. Defendant-appellant, Amy Knower, alleges that she is the sole owner of Abby and argues on appeal the following assignments of error: (1) the trial court erred in finding that she failed to support her claim for full ownership; (2) the trial court erred in finding that she co-owned Abby with Mr. Moore; (3) the trial court erred in failing to accept the testimony of Sheila Ford of the Mississippi Boston Terrier Rescue, that she alone adopted Abby; (4) the trial court erred “by stating that there was no basis,in law for her to decide the custody of a dog and then doing just that;” and (5) the trial court erred by exercising jurisdiction over this matter because City Courts do not have jurisdiction over partition proceedings per Code of Civil Procedure article 4847(B). After a thorough review of the record, we affirm the judgment of the trial court.
| ^Before addressing the merits, we first address whether First City Court has subject matter jurisdiction over this action under La. C.C.P. art. 4847(B), which states that “city courts shall not have jurisdiction in tutorship, curatorship, emancipation, and partition proceedings.” La. C.C.P. art. 4843(E) provides that the jurisdiction of the city court in New Orleans is concurrent with the district court in cases where the amount in dispute or amount of the property involved does not exceed $25,000.00. Further, a partition proceeding between co-owners must be done in kind[1] or by Iicitation,[2] neither of which are ap *167 propriate in this situation involving a living animal.
The disposition for dog ownership in this case was a novel issue for the trial court. Louisiana Civil Code article 4 states that “[w]hen no rule for a particular situation can be derived from legislation or custom, the court is bound to proceed according to equity. To decide equitably, resort is made to justice, reason, and prevailing usages.” In an effort to proceed according to equity principles, the trial relied on La. C.C. art. 802, which provides that “a co-owner is entitled to use the thing held in indivisión according to its destination, but he cannot prevent another co-owner from making such use of it.” The trial court also relied on La. C.C. art. 808, which states that “when the mode of use and management of the thing held in |sindivision is not determined by an agreement of all co-owners and partition is not available, a court, upon petition by a co-owner, may determine the use and management.” After a review of these codal articles, we find that the trial court, in- an effort to be fair to both parties, correctly applied the laws of co-ownership and breach of contract to the facts of this case; thus, we find no merit in Ms. Knower’s assignment of error that the trial court’s judgment should be dismissed as a nullity for lack of subject matter jurisdiction.
In regard to the merits, the issue before this Court is whether the trial court manifestly erred in its findings that (1) Abby was co-owned, and (2) that Mr. Moore “is the best person to determine the use and management of Abby.” The trial court issued extensive and comprehensive written reasons for judgment on April 18, 2016, that more than adequately state the facts and explain the decision, and '-are stated as follows:
In the Original Petition for Damages, the plaintiff, Bruce Macon Moore, alleges that in the summer of 2010 he and the' defendant, Amy Knower, were in a personal relationship and while they were living together in his home, they mutually decided to adopt a pet. Plaintiff alleges that both parties jointly adopted the pet, Abby, a Boston terrier from the Mississippi Boston Terrier Rescue (MBTR) in December 2010. Until September 2012, the parties lived together and jointly shared expenses for the care and management of the dog, Abby.
After the parties ended their cohabitation in 2010, they began an arrangement in which each person co-possessed, Abby. Abby traveled between their respective residences, one week on and one week off, exchanging on Sundays. The parties also retained keys to each other’s homes. During this time, and from time to time they would assist each other with the feeding and walking of Abby if either had a conflict.
pFor approximately two years, Mr. Moore and Ms. Knower continued to co-possess Abby in this fashion. The parties were very civil to each other during their breakup. They continued to associate with the same friends, and also socialized with each other from time to time. In spite of their relationship status, the parties continued to spend a lot of time together. In August of 2014, Mr. Moore and Ms. Knower decided to give their relationship a second chance.
While the plaintiff and the defendant resumed their romantic relationship in 2014, they did not cohabitate again. They continued to live separately, but *168 the couple also co-possessed Abby according to the same schedule used during the breakup, each still -willing to aid the other in the event of a conflict during his or her time with the dog. The parties continued this arrangement for the care, and management of Abby until July 2015. For approximately five years, each party cared for Abby, expended monies on pet supplies, medication, veterinarian expenses, food, etc. Neither party disputes the existence of an informal and mutual arrangement to care for Abby.
The parties amicably split again in May 2015. Although both the plaintiff and the defendant understood the finality of the breakup, they continued to co-possess Abby until the arrangement came to an abrupt end during the Fourth of July weekend in 2015. The plaintiff testified at trial that during this holiday weekend, suddenly and without warning, Ms. Knower refused to exchange Abby on them next exchange date of July 9, 2015. Plaintiff tried, through email communication, telephone calls and text messages, to convince Ms. Knower to convert back to their arrangement, to no avail. Throughout his testimony, Mr. Moore was adamant that it was always the intention of the parties to jointly care for Abby regardless of their relationship status.
Mr. Moore testified that during the course of their relationship, the only shared expense, the only object that both parties shared was Abby. At the time the parties lived together, he avers that he was responsible for the payment of his mortgage, though Ms. Knower did pay the utilities at his home while she resided there. He also stated that they did not share any furniture, electronics, or any other household items; their finances were completely separate. The care of Abby was distinct, however. Both
plaintiff and defendant provided for care, comfort, and management of the dog. Once Amy unilaterally decided to terminate their co-possession arrangement, Macon [Mr. Moore] was surprised and filed the instant suit.
Mr. Moore testified that it was always their joint intention to co-possess Abby. He asserts that the parties always contemplated this because they did not want Amy’s [Ms. Knower’s] prior ownership of a dog, Rocky, to negatively affect their chances of adopting Abby. Ms. Knower had given Rocky away to a friend, Steve Valack, prior to [.¡her cohabitation with the plaintiff. He recalls them filling out the application to adopt Abby together on the MTBR website. He also testified that both parties went to Pet Smart in Mississippi to collect Abby after the application was approved. Before the dog’s arrival, Mr. Moore purchased various items from Pet Smart for Abby. Once Abby arrived, both Ms. Knower and Mr. Moore interacted with the dog, and they brought the dog to Mr. Moore’s home.
To bolster his argument that the parties always intended to jointly care for Abby, Mr. Moore called several witnesses at trial. Steve Valack testified that he and Mr. Moore had been friends for years and that he gladly took Rocky when Ms. Knower sought a new home for the dog. Mr. Valack also testified that he frequently socialized with the couple and he understood that the couple had adopted Abby together.
The plaintiff also called Kristin Schil-linger and her husband Gary Schillinger, a couple with whom the plaintiff and defendant were close friends. Kristin testified that prior to Abby’s adoption, both Mr. Moore and Ms. Knower were excited they were getting a pet together. She also testified that she became very *169 close to Abby herself: When Mrs. Schil-linger was out of work, she happily walked Abby for Knower and Moore. She testified that both parties paid her for walking Abby either in cash or by check. Even though Mrs. Sehillinger heard both plaintiff and defendant refer to Abby as “my dog”, sole ownership of Abby was never discussed. It was her understanding that Abby was their dog. [Emphasis in original]
Gary Sehillinger similarly testified that the parties’ actions demonstrated that Abby was their dog. The care of Abby had always been a joint venture, and he did not recall either party speaking in terms of sole ownership. The Schillingers also testified that they were both impressed with the level of maturity displayed by the plaintiff and the defendant after the first break up. The Schillingers testified that both Knower and Moore loved Abby and were committed to sharing their time with the dog although they were no longer a couple. The Schillingers were both surprised when Ms. Knower refused to return Abby in July 2015 because the arrangement seemed to be working so well. Abby was a very happy, social dog, and seemed to thrive with both parties.
Amy Knower’s testimony, however, disputes that the parties ever co-possessed Abby. She testified that she always considered Abby to be solely her dog. Though she freely admitted during testimony that Macoh [Mr. Moore] did care for Abby regardless of their relationship status, she testified that Abby was hers alone.
Ms. Knower alleges that after the first breakup in 2012 with Mr. Moore, she only allowed him to spend time with Abby so as not to | compound his sadness over her termination of the relationship. She stated that she had always intended to sever the shared arrangement. After the last breakup, sometime in June, she testified that Mr. Moore asked her to feed Abby for one night because he had a prior engagement; she agreed but was later’ told he was on a date. She felt foolish that she continued in this arrangement to share the dog, as she felt Abby was hers alone, and she decided to work up the courage to confront Mr. Moore. She finally took sole possession of Abby in July 2015 to free herself from her tether to Mr. Moore.
The Court first acknowledges that this lawsuit presents a novel issue. At various times during testimony, and in conferences, the Court advised both parties as well as counsel that this is an emotionally fraught issue, and the decision rendered by the Court shall be emotionally detrimental to one party to this suit. The Court tried to settle this matter to the satisfaction of both parties, but the parties were unable to compromise. Therefore, each party must abide the judgment of this Court.
Although it is obvious that both parties are attached to Mrs. Abigail Spark-lepants, the full name of Abby, this dispute is essentially about ownership of an animal. Although both Mr. Moore and Ms. Knower may consider Abby his or her “baby”, there is no basis in the law for the Court to decide the issue of custody of a dog.
The Court depends on the law of co-ownership to make its determination. The defendant does not deny that the plaintiff shared in expenses for the care and maintenance of Abby during their cohabitation and well after. The defendant also agrees that she has been reimbursed some expenses for Abby by the plaintiff. Both parties provided food and shelter for Abby throughout her life, and both made provisions for her to be walked, boarded, etc. in case of his or *170 her absence. Thus, the Court finds that through action, word, and deed, the parties co-owned Abby.
The Court relies heavily on Louisiana Civil Code Articles 802 and 803 to settle this dispute. La. C. C. art. 802 provides that a co-owner is entitled to use the co-owned thing according to its destination, but he cannot prevent another co-owner from making such use of it. Thus, Ms. Knower violated this provision when she did not return Abby to Mr. Moore after the Fourth .of July weekend in 2015.
La C. C. art. 803 states when the mode of use and management of the thing held in indivisión is not determined by an agreement of all co-owners and partition is not available, a court, upon petition by a co-owner, may determine the use and management. The unofficial agreement to share Abby was terminated by Ms. Knower’s unilateral decision to no longer share the dog with Mr. Moore. Even though she 17is a family pet, the Court must treat Abby just as it would a co-owned piano or a co-owned piece of artwork. Although allowable by law, selling Abby and splitting the proceeds between the parties seems to be a [sic] drastic. Thus, it is incumbent upon this Court to determine the use and management of the thing, the dog.
The only substantive evidence that Ms. Knower could rely on to prove'her assertions that Abby was solely her dog was the adoption contract. However, she could not produce the contract at trial. Moreover, the initial emails with Sheila Ford, the adoption coordinator with MBTR, suggest that Abby was to be co-owned by Ms, Knower and Mr. Moore. For example in an excerpt from a December 2010 email, Ms. Knower wrote: “We are excited in anticipation of the Home Visit and the possible adoption of our new companion.” ... From the evidence adduced at trial, it was not until July 3, 2015, in, her email communications with Sheila Ford, almost five years later, that Ms. Knower begins to assert that she owns Abby solely. See P’s Exhibit 14a: “I am writing in an attempt to acquire, the signed paperwork during her adoption... 1 am trying to prove ownership of Gemma [Abby] and this could really assist me.”
Ms. Knower also entered into evidence the deposition of Sheila Ford to support her claim of full ownership, and her deposition testimony is problematic to say the least. Before Mr. Moore had notice that Ms. Knower planned to keep Abby and before the lawsuit had been filed, Ms. Knower contacted Sheila Ford to discuss the ownership of Abby. Ms. Knower knew that Mr. Moore planned to spend the Fourth of July in the French Quarter, yet offered to keep Abby for the weekend. Ms. Knower did not have a discussion with Mr. Moore about ownership, yet she contacted Sheila Ford, and also sent a picture of herself with the dog. These actions demonstrate to the Court that Ms. Knower planned to keep the dog, but wanted to shore up support for her claim of full ownership.
Emails between the Knower and Ms. Ford continue through September and October 2015 regarding Abby, and Ms. Ford’s possible testimony at trial. Ms. Knower continued to send Ms. Ford pictures of her family .members and Abby. The emails initially .reveal a very cordial relationship between Knower and Ford, especially with Ms. Ford commiserating with the defendant over her potential loss of Abby. See P’s Exhibit 14c: “I’m sure you are troubled over all this. I know I would be if someone was trying to take my baby.” It.is noteworthy that Ms. Knower did not submit any pictures *171 of herself with Abby and Mr. Moore at any time during her email communication with Ms. Ford.
It is also noteworthy that communication between Ms. Knowér and Ms. Ford became tense in January 2016. Ms. Ford initially was no longer amenable to testifying at trial, she wanted to rely on her 1 ^notarized affidavit, and would only submit to a deposition. Until this point, the emails from Ms. Knower to Ms. Ford displayed a clear bias in Ms. Knower’s favor and suggest that Ms. Knower tried to influence Ms. Ford’s recollection. In her deposition, Ms. Ford could only testify that it was common practice for one party to adopt a pet because of legal issues that may arise. She does state that she remembers Amy’s name from Gemma’s [Abby] file. However, Mr. Moore does not dispute that he never tried to contact Sheila Ford; Amy Knower was the point of contact.
Ms. Knower could produce no other evidence to contradict the testimony of the Schillingers, Mr. Valack, or even Mr. Moore .that the parties co-owned the dog. Nor does the Court believe that the adoption contract would be dispostive. The Court finds the testimony of these witnesses more credible, than that of Sheila Ford.
After testimony concluded, the Court once more implored the parties to try and reach an amicable agreement regarding Abby. Mr. Moore testified that he wanted to keep Abby himself, but he would be agreeable to continue in the arrangement that seemed to be successful before Ms. Knower kept the dog in July 2015. Ms. Knower testified that she can no longer continue in the arrangement with the plaintiff, and wants Abby for herself.
Both parties testified at trial that before May 2015, even when the parties were involved in other relationships they continued to share Abby. Mr. Moore testified that he would be willing to exr change Abby at neutral locations, such as the veterinarian, or the Schillingers. He asserted that he would do whatever it took to minimize any interaction with Ms. Knower because of her discomfort with interacting with him. Ms. Knower is unwilling to compromise because she wants the parties to completely sever all ties with each other. When asked on cross-examination what was more important to her, retaining Abby or eliminating Mr. Moore completely from her life, Ms. Knower testified that a [sic] making a clean break from Mr. Moore was most important.
Based on the above reasons, the Court finds the plaintiff, Bruce Macon Moore, is the best person to determine the use and management of Abby. It is clear from the evidence and testimony at trial that. Abby was co-owned by .the parties. Ms. Knower had no right to unilaterally end an arrangement into which both parties willing entered and participated in for the better part of five years. Ms, Knower simply adduced insufficient proof to support her claim of full ownership.
THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED that plaintiff is hereby awarded Abby, and may solely | ¡determine the use and management of the dog. Each party is responsible for his/her costs.
After a careful review of the record and an evaluation of the relevant jurisprudence, we find no manifest error, or abuse of discretion, in the trial court’s factual findings and conclusions of law. Further, we find that' the reasons for judgment effectively discuss the factual and procedural background of this case and provide an excellent analysis for the trial court’s *172 finding that Abby was co-owned by the parties and that Mr. Moore is the best person to determine the use and management of Abby; thus, we hereby adopt as our own the written reasons for judgment signed by the trial court on April 18, 2016.
For these reasons, we hereby affirm the judgment of the trial court, which ruled that Mr. Moore has the right to determine the use and management of Abby.
AFFIRMED
MCKAY, C.J., DISSENTS FOR REASONS ASSIGNED BY J. JENKINS
JENKINS, J., DISSENTS WITH REASONS

. La. C.C. art. 810 defines partition in kind, as follows: "The court shall decree partition in kind when the thing held in indivisión is susceptible to division into as many lots of nearly equal value as there are shares and the aggregate value of all lots is not significantly lower than the value of the property in the state of indivisión."

. La. C.C. art. 811 defines partition by licitation, as follows: “When the thing held in *167 indivisión is not susceptible to partition in kind, the court shall decree a partition by licitation or by private sale and the proceeds shall be distributed to the co-owners 'in proportion to their shares.”'