# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| KAREN CALLAHAN, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | C.A. No. 2024-1099-BWD |
| | ) | |
| JOSEPH NELSON, | ) | |
| | ) | |
| Respondent. | ) | |

## OPINION

Date Submitted: November 7, 2025
Date Decided: November 14, 2025

William B. Larson, Jr., John J. Klusman, III, MANNING GROSS + MASSENBURG LLP, Wilmington, DE; *Attorneys for Petitioner Karen Callahan.*

Josiah R. Wolcott, CONNOLLY GALLAGHER LLP, Newark, DE; *Attorneys for Respondent Joseph Nelson.*

**DAVID, V.C.**

The power of a dog, per Rudyard Kipling, is to tear one's heart in two:

Buy a pup and your money will buy
Love unflinching that cannot lie—
Perfect passion and worship fed
By a kick in the ribs or a pat on the head. . . .

[But] [w]hen the spirit that answered your every mood
Is gone—wherever it goes—for good,
You will discover how much you care,
And will give your heart to a dog to tear.[1]

This opinion resolves an issue of first impression under Delaware law. When parties wish to end their joint ownership of a companion animal, how should equity act to fairly divide the property interests in their pet? In this case, the petitioner and respondent acquired a Goldendoodle named Tucker while they were dating. After their relationship ended, a years-long legal battle over Tucker's ownership ensued. In a prior memorandum opinion, I held that in equity, partition provides the remedy for co-owners wishing to sever their interests in jointly owned property, including a dog. I did not decide *how* to partition Tucker at that time, but directed the parties to meet and confer on an appropriate procedure, keeping in mind that "[t]he right procedure will result in one party owning Tucker and the other receiving a monetary award." *Callahan v. Nelson*, 2025 WL 1326719, at *1 (Del. Ch. May 7, 2025) [hereinafter Mem. Op.].

---

[1] RUDYARD KIPLING, *The Power of the Dog*, *in* ACTIONS AND REACTIONS (1910).

Such an outcome, though necessary, will inevitably result in disappointment—possibly heartbreak—for one of the parties. It is therefore unsurprising that the parties could not reach agreement on a partition procedure. The petitioner proposes a partition by "transparent auction," in which the party willing to pay the highest price to the other will acquire Tucker. The respondent, instead, asks the Court to award ownership based on an evaluation of Tucker's best interests.

Though the question presented is somewhat novel, I do not approach it from a blank slate. At common law, the default procedure for partition is a physical division in kind. Where physical division is not possible or would be detrimental to the co-owners, the alternative is an auction aimed at maximizing the value of the partitioned property for the benefit of the owners. In my view, longstanding common law gives us the right place to start the analysis—with an auction that protects all the owners' interests by awarding ownership to the highest bidder while fairly compensating the losing bidder.

But a court of equity has broad latitude to balance interests and fashion remedies as appropriate. Dogs are property, but they are not furniture; they are living, sentient beings. I therefore apply a presumption that an auction is the most appropriate partition procedure for a companion animal, but one that could be rebutted by allegations (and ultimately evidence) that the equities require awarding ownership to one owner over the other, particularly to prevent harm to the animal.

In the case before me, the parties presented evidence of Tucker's medical history as well as his bond with the petitioner and respondent, but nothing in the record suggests that either party would harm Tucker. To the contrary, I am utterly convinced that both parties love this dog and would care for him. Accordingly, by separate order, I appoint a partition trustee to conduct a private auction to determine Tucker's ownership.

## I. BACKGROUND[2]

As detailed in the Court's May 7, 2025 memorandum opinion (the "Memorandum Opinion"), this action concerns a petition to partition a Goldendoodle named Tucker.[3] Karen Callahan ("Petitioner") and Joseph Nelson ("Respondent") acquired Tucker while they were dating. Mem. Op. at *1. Petitioner and Respondent ended their relationship in May 2022, and Petitioner has not seen Tucker since. *Id.*

In June 2022, Petitioner filed a petition for replevin in the Justice of the Peace Court ("JP Court"), seeking the return of Tucker and other items. *Callahan v. Nelson*, 2024 WL 2764433, at *1 (Del. Super. May 29, 2024) [hereinafter Super. Ct.

---

[2] Petitioner's exhibits are cited as "PX __" and Respondent's exhibits are cited as "RX __". Dkt. 26. The November 7, 2025 hearing transcript has not been finalized. Citations in the form of "Draft Tr. __" refer to a draft transcript of the November 7, 2025 hearing.

[3] A photograph of Tucker, introduced at the evidentiary hearing as PX 1, is attached as Exhibit A. It is undisputed that Tucker is a very good boy.

Op.]. In December, the JP Court issued a post-trial decision, "which ruled that [Petitioner] was the rightful owner of the dog." *Id.* Respondent appealed the JP Court's ruling to the Court of Common Pleas ("CCP") and Petitioner filed a *de novo* petition for replevin in CCP. *Id.* at *2. CCP held a two-day trial, after which it "ruled in favor of [Respondent], finding that [Petitioner] could not obtain replevin because the dog was jointly owned by both [Respondent] and [Petitioner]." *Id.* Petitioner appealed the CCP's ruling to the Superior Court, which affirmed, explaining that the CCP's finding of joint ownership was supported by the evidence.[4] *Id.*

On October 28, 2024, Petitioner initiated this action through the filing of a Petition for Partition (the "Petition"), seeking an order for partition of Tucker.[5] Respondent moved to dismiss the Petition,[6] arguing that the Court should refuse to

---

[4] Respondent continues to argue in this action that he is Tucker's sole owner. *See* Draft Tr. at 156:8–9 (arguing that Respondent "is the sole owner of Tucker"). Contradicting that argument, the Superior Court clearly held that "CCP found Nelson had a joint ownership interest with Callahan" and "CCP followed an 'orderly and logical deductive process' finding joint ownership." Super. Ct. Op. at *3. The parties are therefore estopped from relitigating joint ownership. *See Glob. Discovery Biosciences Corp. v. Harrington*, 2023 WL 8295946, at *8 (Del. Ch. Dec. 1, 2023) (explaining that under the doctrine of collateral estoppel, "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." (quoting *Norman v. State*, 976 A.2d 843, 868 (Del. 2009))).

[5] Pet. for Partition, Dkt. 1.

[6] Def. Joseph Nelson's Mot. to Dismiss the Pet. for Partition of Pl. Karen Callahan, Dkt. 4.

order the "unprecedented" relief of partitioning a companion animal.[7]  On May 7, 2025, the Court issued the Memorandum Opinion denying Respondent's motion to dismiss, explaining that "in equity, partition provides the remedy for co-owners wishing to sever their interests in jointly owned property," and "[w]ithout that equitable remedy, the parties might remain trapped in joint ownership of their pet indefinitely, notwithstanding what I assume is a mutual desire to go separate ways." Mem. Op. at *1, *3.

The Memorandum Opinion did not decide how to partition a dog, but noted that "[t]he right procedure will result in one party owning Tucker and the other receiving a monetary award[,]" and directed the parties to meet and confer, and submit supplemental briefing if necessary, on the appropriate procedure to govern the partition. *Id.* at *1, *4.

After the Court issued the Memorandum Opinion, the parties met and conferred but could not reach agreement.[8]  On June 20, Petitioner filed her opening brief in support of a "transparent auction."[9]  On July 21, Respondent filed his

---

[7] Opening Br. in Supp. of Def. Joseph Nelson's Mot. to Dismiss the "Pet. for Partition" of Pl. Karen Callahan at 5, Dkt. 7.

[8] Dkt. 13.

[9] Opening Br. in Supp. of a Transparent Auction as the Next Step in the Process for Partitioning Tucker [hereinafter OB], Dkt. 14.

answering brief in opposition, arguing that a "best-interest-of-Tucker" analysis should dictate the partition process.[10]  Petitioner filed a reply brief on August 1.[11]

On September 2, the Court issued a letter to the parties advising them that:

> After reviewing the parties' briefing, I believe the Court will be best positioned to weigh the equities after it is presented with a factual record.  Accordingly, the Court will hold a one-day evidentiary hearing to provide the parties an opportunity to supplement their legal arguments with evidence to support their positions on the appropriate partition procedure.  Respondent argues that a best-interests analysis should determine ownership in the partition; at the hearing, the Court will consider evidence about Tucker's interests, which may be relevant in determining the appropriate procedure for the partition.[12]

The Court held an evidentiary hearing on November 7, 2025.[13]  At the hearing, the Court heard testimony from four witnesses, including Petitioner; Respondent; Respondent's daughter, Janelle Nelson; and Dr. Lena Provoost, a veterinary behaviorist at the University of Pennsylvania School of Veterinary Medicine.[14]

## II.    ANALYSIS

The question before the Court is how to partition a companion animal—here, the parties' Goldendoodle, Tucker.

---

[10] Answering Br. in Opp'n to Pet'r's Request for a Transparent Auction as the Next Step in the Process for Partitioning Tucker at 5 [hereinafter AB], Dkt. 15.

[11] Reply Br. in Further Supp. of a Transparent Auction as the Next Step in the Process of Partitioning Tucker, Dkt. 17.

[12] Letter to Counsel, Dkt. 18.

[13] Dkt. 27.

[14] *Id.*

The equitable remedy of partition developed under English law to provide a remedy to co-owners wishing to sever their undivided interests in jointly owned property. *Peters v. Robinson*, 636 A.2d 926, 928 (Del. 1994). "The purpose of a partition proceeding is to eliminate a present concurrent interest in the same property so that each owner may enjoy and possess his or her interest in severalty." *Id.* at 929. Delaware's partition statute currently governs only the right to partition real property,[15] but courts of equity also "have historical[ly] upheld the right of a tenant in common to seek a partition of personal property." *Burkett v. Ward*, 2012 WL 6764072, at *1 (Del. Ch. Dec. 19, 2012) (citing *JLF, Inc. v. NJE Aircraft Corp.*, 1988 WL 130641, at *1 (Del. Ch. Dec. 5, 1988)).[16]

---

[15] 25 *Del C.* § 721(a)

> When any 2 or more persons hold lands and tenements within this State as joint tenants or tenants in common, . . . any 1 or more of them, . . . may present a petition to the Court of Chancery of the county wherein the lands and tenements are situate . . . . The petition shall state the facts, describe the lands and tenements so held, and pray partition thereof among the several parties entitled to such lands and tenements according to their several and respective interests.

[16] *See also Reed v. Greene*, 2020 WL 7239574, at *2 (Del. Ch. Dec. 8, 2020) (finding equitable jurisdiction over partition of a bank account), *R. & R. adopted*, 2020 WL 7239574 (Del. Ch. Dec. 21, 2020); *Carradin v. Carradin*, 1980 WL 10015, at *3 (Del. Ch. Jan. 31, 1980) ("A court of equity is the proper tribunal for the partition of personal property whether the title is legal or equitable . . . .").

7

The Memorandum Opinion held that a companion animal, which the law views as personal property,[17] is subject to a partition remedy. Mem. Op. at *2. This Court has never partitioned a pet, so the procedure for doing so is uncharted. As a court of equity, the Court of Chancery "has broad latitude to exercise its equitable powers to craft a remedy." *Hogg v. Walker*, 622 A.2d 648, 654 (Del. 1993). The Court's remedial powers "are complete to fashion any form of equitable and monetary relief as may be appropriate" and "to grant such other relief as the facts of a particular case may dictate." *Weinberger v. UOP, Inc.*, 457 A.2d 701, 714 (Del. 1983); *see also Texas Instruments Inc. v. Tandy Corp.*, 1992 WL 103772, at *6 (Del. Ch. May 12, 1992) ("[The Court] may exercise the protean power of equity to fashion appropriate relief."); William T. Quillen & Michael Hanrahan, *A Short History of the Delaware Court of Chancery—1792–1992*, 18 DEL. J. CORP. L. 819, 820 (1993) ("Delaware's Court of Chancery has never become so bound by procedural technicalities and restrictive legal doctrines that it has failed the fundamental purpose of an equity court—to provide relief suited to the circumstances when no other remedy is available at law.").

---

[17] *See* 16 *Del. C.* § 3050F(a) ("All dogs shall be deemed personal property . . . ."); *see also, e.g.*, *Conte v. Fossett*, 2013 WL 1143329, at *1 (Del. Super. Mar. 19, 2013) ("[T]he law views a dog as property."); *Naples v. Miller*, 2009 WL 1163504, at *2 (Del. Super. Apr. 30, 2009) (same).

8

Under Delaware's real property partition statute, the default partition procedure is "a physical, in kind, division of the real property" unless division would "be detrimental to the interests of the parties entitled[.]" *Est. of CTC E., LLC v. Goldstein*, 2022 WL 4592055, at *6 (Del. Ch. Sep. 30, 2022) (quoting *Peters*, 636 A.2d at 929), *aff'd sub nom. In re CTC E., LLC v. Goldstein*, 2022 WL 4592055 (Del. Ch. Mar. 31, 2023); *see* 25 *Del. C.* § 701 *et seq.* Of course, the Court will not order the physical division of a companion animal, even if the discerning wisdom of King Solomon teaches otherwise.[18]

Under the partition statute and at common law, the alternative procedure for partition is a sale at "public vendue"—in other words, a public auction.[19] *In re Real*

---

[18] 1 *Kings* 3:9–12. *See Seokoh, Inc. v. Lard-PT, LLC*, 2021 WL 1197593, at *1 (Del. Ch. Mar. 30, 2021) ("When conjuring an image of compromise, many invoke King Solomon, or Jedidiah, the proverbial source of the classic aphorism, 'split the baby.'") (citing *Kings* 3:16–28)); *Sequoia Presidential Yacht Gp. LLC v. FE P'rs LLC*, 2016 WL 6678444, at *1 (Del. Ch. Nov. 14, 2016) ("[King] Solomon offered to cut the infant in two—which is considered the epitome of wisdom.").

[19] The Memorandum Opinion explained that it would make little sense to order a public auction when the parties here attach more value to Tucker than a member of the public would. For similar reasons, an appraisal of Tucker's fair market value is unlikely to be helpful here. *See* OB at 13 (explaining that "Tucker has value to the parties well beyond his likely appraised value as a middle-aged dog"). Neither party has advocated for a public auction or an appraisal procedure.

In addition to the parties' proposals, I have considered other potential mechanisms to effect a partition, but none provide a better alternative than the ones the parties have suggested. For instance, another alternative to partition in kind is a partition in time, which could require the parties to split time with Tucker. *See, e.g.*, *Narang v. Ranjan*, 377 P.3d 376,

*Est. of Jamies's L.L.C.*, 2006 WL 644473, at \*3 (Del. Ch. Mar. 1, 2006) ("[W]hen property may not be equitably partitioned in kind it must be partitioned through a sale."). The goal is to "put the property to its highest and best use through transfer to the one willing to pay the most for it." *Libeau v. Fox*, 880 A.2d 1049, 1056 (Del. Ch.), *judgment entered*, (Del. Ch. 2005), *aff'd in part, rev'd in part on other grounds*, 892 A.2d 1068 (Del. 2006).[20] Consistent with that goal, Petitioner requests an auction that would "create[] a level playing field for both Parties" and "objectively determine[] the value and interest each Party places on [Tucker]," "ensur[ing] that the person who values the property most highly will obtain Tucker and maximiz[ing] the money to be received by the other party."[21]

---

382 (Ariz. Ct. App. 2016) (considering request for partition in time of a residence); *In re McDowell's Est.*, 345 N.Y.S.2d 828 (N.Y. Sur. Ct. 1973) (partition in time of a rocking chair). That could look like a joint custody arrangement. The parties here do not want that. *See* OB at 13 ("The Parties prefer a clean split and are unwilling to share custody."). And public policy requires permitting unmarried people who do not share children to part ways. *See* Mem. Op. at \*3 (explaining that without a partition remedy, "the parties might remain trapped in joint ownership of their pet indefinitely, notwithstanding what I assume is a mutual desire to go separate ways," and "[t]o the extent public policy and equity support protecting companion animals, crafting a fair and orderly process to resolve the rights of these co-owners so they can move on is in the best interests of everyone involved, including Tucker").

[20] *See also, e.g.*, *In re Real Est. of Jamies's L.L.C.*, 2006 WL 644473, at \*4 (ordering a partition by sale in lieu of a partition in kind where "a partition in kind would fail to achieve an equitable division and would harm the parties entitled to the Property by failing to maximize the value of the Property").

[21] OB at 7–8.

10

Respondent advocates, instead, for an evidentiary hearing at which the Court would determine whether it is in Tucker's best interests to reside with Petitioner or Respondent, and award ownership based on that assessment.[22]

I believe our preexisting common law governing property ownership provides the right place to start the analysis. While a few courts have applied a best-interests standard when resolving ownership disputes over a companion animal, none have explained why that approach should prevail over the common law default of a value-maximizing auction.[23] No mechanism can wholly compensate a losing bidder for the emotional loss of a beloved pet, but an auction seems to provide the fairest option for the losing bidder by maximizing her recovery if she does not take home the lot.[24]

---

[22] *See* AB at 1 ("[A] factor-based analysis of Tucker's best interest, after an evidentiary hearing following limited discovery, should be the primary consideration in this Court's ultimate decision concerning Tucker.").

[23] *See, e.g.*, *Roberts v. Duhaime*, 2024 WL 2932511, at *3 (Conn. Super. Ct. June 4, 2024) (considering "what would be in the best interests of the dog" to award ownership of a border collie named Bear); *Ramirez v. Varin*, 2020 WL 13823796, at *2 (Ariz. Super. Ct. Nov. 25, 2020) (weighing the potential hardships to two dogs named Max and Minnie in determining ownership); *Moore v. Knower*, 214 So.3d 165, 171 (La. Ct. App. 2017) (affirming trial court's decision awarding ownership based on who was the "best person to determine the use and management of" a Boston terrier named Mrs. Abigail Sparklepants); *but see Steadman v. Steadman*, 332 So.2d 557, 558 (La. Ct. App. 1976) (affirming an order "to surrender [a] dog on the date of the auction" in a partition).

[24] Respondent contends that the Court should take into account the parties' respective financial positions and should not partition by auction if one party has greater means than the other to succeed in the auction. That, I find, is not a relevant factor in selecting an appropriate partition procedure; a procedure should be selected either because it advances the interests of the co-owners by maximizing value for them or because it avoids potential harm to the companion animal.

11

I therefore begin with a presumption that partition of a companion animal should occur through an auction designed to maximize value for the co-owners. That presumption may be rebutted, however, because a court of equity has broad latitude to balance various interests and fashion remedies as appropriate. When granting relief in equity, a court "must consider all of the foreseeable consequences of its order and balance them" to do more good than harm. *See Lennane v. Ask Comput. Sys., Inc.*, 1990 WL 154150, at *6 (Del. Ch. Oct. 11, 1990). This Court is "not bound by formula or restrained by any limitation that tends to trammel the free and just exercise of discretion." *Nakahara v. NS 1991 Am. Tr.*, 718 A.2d 518, 522 (Del. Ch. 1998) (quoting *Keystone Driller Co. v. Gen. Excavator Co.*, 290 U.S. 240, 245–46 (1933)). Dogs are property, but they are not furniture; they are living, sentient beings with value that transcends economics. If the equities of a particular case require awarding ownership to one owner over another—particularly to prevent harm to a sentient being—a court of equity is bound to consider those facts as well.

The facts of this case do not support deviating from the common law presumption of a value-maximizing auction. It is clear from the evidence that both Petitioner and Respondent care deeply for Tucker, and that either one would make a

suitable pet owner.[25]   Certainly, nothing in the record suggests that either party intends to harm Tucker[26] or has litigated this action with improper motives.

Respondent argues that if the parties were married, the Family Court would "take into consideration the well-being of the companion animal" when awarding ownership, by considering "[t]he ability of each party to own, support, and provide necessary care for [Tucker]," "[t]he attachment between [Tucker] and each of the parties," and "[t]he time and effort each party spent with [Tucker] during the [relationship] tending to [Tucker's] needs."[27]   Here, both parties have the financial means to care for a dog[28] and have spent time tending to Tucker's needs.[29]   None of the Family Court factors, nor any other allegations or evidence in the record, provide a basis to deviate from the presumption of an auction.

---

[25] *See* Draft Tr. at 145:21–146:4 (Petitioner's counsel arguing that the parties "both have the money to take care of Tucker, a desire to take care of Tucker, and I think Tucker's interest would be covered . . . either way"); *id.* at 159:1–3 (Respondent's counsel arguing that "both sides have evidenced . . . a position that they . . . can love and care for Tucker").

[26] *Id.* at 148:17–23 (Petitioner's counsel noting that "if we had a *Shiloh* situation and somebody was abusive of the dog, then of course that would be a different situation, but . . . that's certainly not the case here").

[27] AB at 11 (quoting 17 *Del. C.* § 1513(g)(2)).

[28] *See* RX 3–7; RX 10–14; RX 17.

[29] Draft Tr. (Callahan) at 7:4–10 ("Tucker was with me 24/7, and the only exception . . . being a doctor's appointment."); *id.* (Nelson) at 101:18–102:5 ("Tucker goes everywhere with me.").

At the evidentiary hearing, Dr. Lena Provoost, a veterinary behaviorist at the University of Pennsylvania School of Veterinary Medicine, testified that in her opinion, Tucker has "separation anxiety and distress, hyperattachment to [Respondent], and generalized anxiety disorder" and "is extremely sensitive to minor changes in environment and routine."[30]  Based on that diagnosis, Dr. Provoost concluded that "Tucker will experience some stress being in a new home."[31]  On the other hand, the record reflects that prior to the parties' separation, Tucker was also strongly bonded to Petitioner.[32]  This evidence does not clearly point to Petitioner or Respondent as a more suitable owner for Tucker.  Even if the evidence slightly favored one owner over the other, it fails to convince me that a partition by auction is not the fairest method under the circumstances.

---

[30] RX 9 at 2.

[31] Draft Tr. (Provoost) at 62:21–22.  Dr. Provoost examined Tucker one time and relied primarily on Respondent's accounts of Tucker's behavior to reach that conclusion.  *Id.* at 64:12–65:3, 66:14–67:1.

[32] *Id.* (Callahan) at 8:6–13 ("[H]e was . . . very attached to me.  I had a very stable environment, very much [a] routine with him.  It was very structured.  He was a very happy, healthy, balanced dog in my care."); PX 2 (Respondent stating that "I work every day and [Petitioner] is home . . . .  [T]ucker is closer to her").

Even if Tucker remains with Respondent, the record reflects that Respondent intends to move residences in the near future, which would also introduce changes to Tucker's environment and routine.  *See* Draft Tr. (Provoost) at 62:6–14 ("[R]ehoming even into a new environment with the same [owner] can cause regression.").

## III. CONCLUSION

For the reasons explained above, partition in this matter will occur through an auction. To implement that procedure, the Court appoints Seth L. Thompson, Esquire, to serve as partition trustee to conduct a private auction to determine Tucker's ownership. The parties are directed to meet and confer with the partition trustee to set the procedures and date of the auction.

# Exhibit A

