**Vera Ann LIBEAU, Plaintiff Below, Appellant,**

v.

**Janet Mary FOX and Elena A. Vargas, Defendants Below, Appellees.**

No. 309,2005.

Supreme Court of Delaware.

Submitted: Nov. 7, 2005.
Decided: Jan. 24, 2006.

19. Appendix, A–9.

20. Appendix, A–11.

21. Appendix, A14.

22. *Terry,* 392 U.S. at 27, 88 S.Ct. 1868.

23. *Jones,* 745 A.2d at 861.

Dean A. Campbell, of Hudson, Jones, Jaywork and Fisher, L.L.C., Georgetown, DE, for Appellant.

Mary Robin Schrider–Fox, of Tunnell & Raysor, P.A., Georgetown, DE, for Appellees.

Before STEELE, Chief Justice, BERGER and RIDGELY, Justices.

BERGER, Justice:

In this appeal, we consider the enforceability of an agreement between three friends concerning their co-ownership of a beach house. The Court of Chancery held that the agreement effectively deprived the co-owners of their statutory right to partition the property. The trial court also reformed the agreement in two respects: 1) it limited the term of the agreement so that it will expire, at the latest, upon the death of the last of the three original co-owners; and 2) it changed the parties' ownership interest from a joint tenancy with right of survivorship to a tenancy in common. We agree with the Court of Chancery that the agreement is enforceable and that reformation to provide a limited term was appropriate. We find no basis in the record, however, to convert the parties' chosen form of ownership. Accordingly, we affirm in part and reverse in part.

## Factual and Procedural Background

In 1986, after having vacationed together at the Delaware beach for several years, Vera A. Libeau, Janet M. Fox and Elena A. Vargas purchased a house in North Bethany Beach. The purchase price was $162,500, and the three friends took title as joint tenants with right of survivorship. Before buying the beach house, they discussed what would happen if one or more of the parties wanted to sell their interest in the property. Fox drafted an agreement setting forth their financial obligations, as well as the process by which the co-owners' interests could be transferred. The Agreement, dated December 17, 1986, provides, in relevant part, as follows:

1) The parties will own the property as joint tenants with right of survivorship. If one party dies, her share will be divided equally among the surviving parties.

2) If one party wants to sell her share, she first will offer it to the other parties at its appraised value. If neither of the other parties wants to buy the seller's share, the share may be sold to a third party. Once the seller finds a third-party buyer, however, the remaining parties again will have the option to buy the seller's share on the same terms, find another buyer, or sell their own share.

3) If two parties want to sell their shares, the entire property will be sold unless the third party buys the others' shares.

4) Any third party who purchases an interest in the property must agree to the terms of the Agreement.

In 2002, shortly after she learned that the beach house then was worth between $850,000—$950,000, Libeau decided to sell her share. She obtained an appraisal and offered to sell her share to Fox and Vargas, but neither of them accepted the offer. Libeau did not, thereafter, attempt to sell her interest in the beach house. Instead she filed suit in the Court of Chancery seeking partition of the property; an accounting; and declaratory relief. Following trial, the Court of Chancery dismissed the complaint and entered judgment in favor of Fox and Vargas. The

trial court ordered the parties to execute a new co-ownership agreement that changed their ownership interest from a joint tenancy with right of survivorship to a tenancy in common. As ordered, the new agreement also provides that all successors in interest shall be subject to the terms of the agreement until all of the original co-owners cease to be co-owners, or die.

### Discussion

Libeau argues that the Court of Chancery erred in holding that the Agreement effectively waived her statutory right to partition. She contends that the record does not support a finding that she knowingly and intelligently gave up that right. In addition, in finding the Agreement to be enforceable, Libeau says the trial court misapplied legal precedents as well as the public policy against unreasonable restraints on alienation. Finally, she complains that the trial court erred in ordering the parties to reform the Agreement to eliminate their right of survivorship.

### A. Waiver of Right to Partition

 By statute, co-owners of real property may sever their interests by petitioning for partition.[1] If the property is capable of being divided, the co-owners obtain title to separate subdivided parcels according to their interests in the original parcel.[2] If a physical division of the property would be detrimental to the co-owners' interests, the Court of Chancery may order that the property be sold at public auction and the proceeds divided among the co-owners.[3]

 Although partition is an equitable remedy dating back hundreds of years,[4] landowners may give up their partition rights by agreement.[5] Libeau argues that the Agreement contains no explicit waiver of partition rights, and should be read only as an agreement among co-owners to offer each other a right of first refusal. We adopt the Court of Chancery's analysis rejecting that argument:

> Libeau contends that the Agreement is insufficiently clear and affirmative to waive her statutory right to partition because the Agreement does not specifically state that the Housemates were waiving their rights to seek partition.

> That argument, however, misunderstands the clarity required for an effective waiver. The waiving contract need not contain an explicit disclaimer of partition rights. Rather, the contract need only contain a procedure for the co-owners to sell their interests that is inconsistent with the later maintenance of a partition action. When a contract provides an exit mechanism that is subject to certain conditions, and the filing of a partition action would allow an exiting party to escape those conditions, the exiting party's decision to sign the contract constitutes a waiver of the statutory right of partition.

> Those circumstances exist here.[6]

---

1. 25 *Del.C.* § 721.

2. 25 *Del. C.* § 724.

3. 25 *Del. C.* §§ 729, 733.

4. *See: Peters v. Robinson*, 636 A.2d 926, 928 (Del.1994).

5. *Kuck v. Cropper*, 1978 WL 22465, at *3 (Del.Ch. Dec. 5, 1978). *See also, e.g., Condrey v. Condrey*, 92 So.2d 423, 426 (Fla.1957); *Stromsen v. Stromsen*, 397 Ill. 260, 73 N.E.2d 272, 273 (1947); *Shoup v. Shoup*, 469 Pa. 165, 364 A.2d 1319, 1323 (1976).

6. *Libeau v. Fox*, 880 A.2d 1049, 1057 (Del.Ch. 2005) (Citations omitted.).

### B. Public Policy Favoring Alienation of Property

██ Libeau argues that the Agreement, if construed to prevent partition, constitutes an unreasonable restraint on alienation. She also contends that the trial court "essentially overruled" the settled policy favoring the transferability of real property. We find no merit to either claim. The trial court did note the fact that recent enactments, like the Delaware Agricultural Lands Preservation Act,[7] reflect a public policy favoring reasonable restrictions on alienation in order to protect land from commercial development. In doing so, the trial court merely highlighted the fact that all restraints on alienation are not prohibited:

> [I]t is not tenable ... to consider a restraint on the alienation of land unreasonable simply because that restraint might have the effect of diminishing a party's ability to get the same price that she might obtain if she was subject to no restraint at all.... Right now, for example, our State pays farmers to acquire their development rights, thereby disabling them from selling their land for non-agricultural use. The farmers' upfront decision to accept the benefits of the deal compensates them for the restriction on their ability to alienate the land to commercial developers. Put simply, that a party who availed herself of the benefits of a property ownership bargain now wishes to shun the accompanying restrictions on her right to sell is not a circumstance that presents any obvious conflict with a larger Delaware

public policy. Something much more substantial has to be shown.[8]

The trial court then applied settled law, as articulated in *McInerney v. Slights*[9] and the *Restatement (First) of Property* § 406 (1944), and concluded that the Agreement does not unreasonably restrain alienation during the housemates' lifetime. We affirm that holding on the basis of and for the reasons stated in the Court of Chancery's opinion.

### C. Reformation of the Agreement

██ The trial court ordered that the Agreement be reformed in two respects. As written, the Agreement could last indefinitely if each co-owner repeatedly sold her interest to third parties. The Court of Chancery found that the parties intended their Agreement to remain enforceable until the last of the three original owners either died or sold her interest in the property. Accordingly, the trial court reformed the Agreement to express that limitation. The trial court also ordered that the Agreement be reformed to change the joint tenancy with right of survivorship to a tenancy in common. As the trial court explained, "[r]eformation of the Agreement in this manner reflects my best effort to capture the contract that the Housemates would have crafted in 1986 had they envisioned the precise circumstances they now confront...."[10]

██ It is settled law that the equitable remedy of reformation may be used "to express the 'real agreement' of the parties involved."[11] But reformation "is not a mandate to produce a reasonable result.... Rather, it is based on inten-

---

**7.** 3 *Del.C.* §§ 902—941 (2005).

**8.** *Libeau v. Fox*, 880 A.2d at 1059 (Citations omitted.).

**9.** 1988 WL 34528 (Del.Ch.).

**10.** *Libeau v. Fox*, 880 A.2d at 1065.

**11.** *Cerberus Int'l, Ltd. v. Apollo Mgmt., L.P.*, 794 A.2d 1141, 1151 (Del.2002).

tion."[12] With respect to the first reformation—limiting the duration of the Agreement—the record supports the trial court's conclusion that the parties did not intend the Agreement to last beyond their lives. There is no support, however, for the court's second reformation. The trial court found:

> Consistent with their objectives and close friendship, the Housemates decided, after discussion, to take possession of the Beach House as joint tenants with rights of survivorship. This form of ownership is both recorded in the deed and recited in the Agreement, and reflected their intention that no Housemates' relations or heirs would be entitled to force the remaining two out in the event of someone's death. Rather, if one of the Housemates died, the Beach House would continue to benefit and be used by the survivors. All the Housemates voluntarily and knowingly accepted this decision and signed both the deed and the Agreement that reflected this choice.[13]

Given this factual finding, which is supported by the record, there is no basis on which to reform the Agreement by changing the form of ownership from a joint tenancy with right of survivorship to a tenancy in common.

### Conclusion

Based on the foregoing, the judgment of the Court of Chancery is affirmed in part and reversed in part and remanded to the Court of Chancery for entry of an order in accordance with this Opinion. Jurisdiction is not retained.

---

**12.** *Collins v. Burke,* 418 A.2d 999, 1002–03 (Del.1980).

**13.** *Libeau v. Fox,* 880 A.2d at 1052–53.