**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

PATRICIA W. GRIFFIN
MASTER IN CHANCERY

CHANCERY COURTHOUSE
34 The Circle
GEORGETOWN, DELAWARE 19947

Final Report:     April 26, 2021
Date Submitted:  March 11, 2021

Mark Henckel                           *Via U.S. mail and email*
35444 Mercury Drive
Rehoboth Beach, Delaware 19971

Bruce A. Evatt                          *Via U.S. mail and email*
36103 Knight Street
Camelot Meadows
Rehoboth Beach, Delaware 19971

RE:  *Mark Henckel v. Bruce Evatt*
      C.A. No. 2020-0214 PWG

Dear Mr. Henckel and Mr. Evatt:

Pending before me is a partition action in which one co-owner seeks to partition property and the other co-owner claims that the parties entered into an agreement that waived partition rights. The co-owner seeking partition contends that the waiver agreement is unenforceable due to duress and coercion. I find that the waiver is unenforceable because the restriction on partition is not reasonable in duration and fails to present a reasonable mechanism for sale as an alternative to partition. Accordingly, I recommend that the Court order the property partitioned under 12 *Del. C.* §721 and §724. This is a final report.

## I. Background[1]

Petitioner Mark Henckel ("Henckel") and Respondent Bruce Evatt ("Evatt") entered into a relationship in the early 1990s and jointly owned a home in Towson, Maryland ("Towson Home"), and the property at issue, a manufactured home located at 36103 Knight Street, Camelot Meadows, Rehoboth Beach, Delaware ("Beach House").[2] Their relationship ended and, on or about July 1, 2019, Henckel told Evatt that he planned to move to Rehoboth Beach, Delaware, by the end of August of 2019, when he retired from his job.[3] The parties agreed to put the Towson Home on the market after repairs were made but disputed how the sale proceeds for the house should be split between them.[4] Evatt advised, in an August 21, 2019 email to Henckel, that he would not agree to a sale of the Towson Home unless Henckel agreed to certain conditions, including that Evatt would move into the Beach House.[5] They got an offer on the Towson Home in late August of 2019.[6] Evatt sent Henckel a draft agreement on August 30, 2019.[7] Henckel signed the agreement ("Waiver Agreement") on August 30, 2019 and Evatt signed it on

---

[1] I refer to trial transcript as "Trial Tr." and Respondent's trial exhibits as "Evatt A-".

[2] Trial Tr. 8:4-9; Docket Item ("D.I.") 1, ¶ 5.

[3] Trial Tr. 8:12-21; Trial Tr. 22:18-23:4; Trial Tr. 39:2-4;

[4] Evatt A-9, A-10.

[5] Evatt A-14.

[6] Trial Tr. 39:16-17.

[7] Evatt A-5, A-6.

September 3, 2019.[8]  The Towson Home sold and Evatt moved to the Beach House.[9]

On March 23, 2020, Henckel petitioned the Court to partition the Beach House and order a partition sale.[10]  On May 22, 2020, Evatt filed objections to the petition, arguing that he has the right to remain in the Beach House under the Waiver Agreement.[11]  Henckel responded that the Waiver Agreement is unenforceable due to duress and coercion.[12]  The parties participated in mediation, which was unsuccessful, on August 21, 2020.[13]  An October 21, 2020 telephonic hearing was held on discovery disputes and, on December 22, 2020, the parties attempted mediation a second time, which was also unsuccessful.[14]  The hearing on this matter was held by Zoom on March 11, 2021.[15]

---

[8] Evatt A-8.  The change between the draft and final agreement is that, in the final Waiver Agreement, Henckel agreed that he will not (rather than "never") force Evatt to sell the Beach House. *See* Evatt A-8, ¶ 12; Evatt A-6, ¶ 12.

[9] *See* Trial Tr. 55:17; Evatt A-25.

[10] D.I. 1.

[11] D.I. 7.

[12] D.I. 8.  Henckel argues that Evatt's wrongful conduct (in refusing to sell the Towson Home unless Henckel executed the Waiver Agreement) overcame his free will and he had no adequate legal remedy, since he risked being unable to locate to Delaware consistent with his time-sensitive plans, if the sale of the Towson Home was not completed. *Id.*, ¶¶ 5, 7, 9-10.

[13] D.I. 20.

[14] D.I. 29; D.I. 37.

[15] D.I. 38.

## II. Analysis

At issue in this action is whether the Waiver Agreement constitutes an enforceable waiver of the co-owners' partition rights. "The power to maintain a suit for partition has been an incident to the title of a tenant in common or joint tenant, since the time of Henry VIII."[16] "[It] is based on the law's traditional abhorrence for the restraints on alienation implied by co-tenancy, and by the economic inefficiencies inherent in requiring unanimity concerning the disposition of any property."[17] "It is well-established principle that the right of partition between cotenants is an *absolute* right," that "may be exercised by an adult tenant, without regard to the interests of the other tenants or the inconvenience or hardship that may result."[18] Through its partition statute, Delaware "allows joint tenants to petition this court to sever their interests in real property," as well as personal property, such as a manufactured home.[19] However, the "landowners may give up

---

[16] *Kuck v. Cropper*, 1978 WL 22465, at *3 (Del. Ch. Dec. 5, 1978).

[17] *Lowry v. Irish*, 2020 WL 5587390, at *1 (Del. Ch. Sept. 18, 2020); *see also Libeau v. Fox* [hereinafter "*Libeau v. Fox*"], 880 A.2d 1049, 1055-56 (Del. Ch.), *judgment entered,* (Del. Ch. 2005), *aff'd in part, rev'd in part,* 892 A.2d 1068 (Del. 2006) ("Delaware law recognizes the long-standing common law principle that there must be a default rule that permits co-owners of land, who cannot agree on how to use it, to end their joint tenancy.").

[18] *Kuck*, 1978 WL 22465, at *3 (emphasis included).

[19] *Libeau v. Fox*, 880 A.2d at 1056; *see Burkett v. Ward*, 2012 WL 6764072, at *1 (Del. Ch. Dec. 19, 2012) ("[E]quity courts have historically upheld the right of a tenant in

their partition rights by agreement."[20]  "When a contract provides an exit mechanism that is subject to certain conditions, and the filing of a partition action would allow an exiting party to escape those conditions, the exiting party's decision to sign the contract constitutes a waiver of the statutory right of partition."[21]  Delaware case law "indicates that contracts requiring the parties to eschew exercise of partition are enforceable to the extent they are clear, present some reasonable mechanism for sale as an alternative to partition, and where the restriction on partition is reasonable in duration."[22]

"To effectively waive, the contract containing the waiver must first do so clearly."[23]  However, it does not have to "contain an explicit disclaimer of partition rights," but must "contain a procedure for the co-owners to sell their interests that is inconsistent with the later maintenance of a partition action."[24]  And, the waiver must be "fair and equitable," which means the contract "must be in

---

common to seek partition of personal property.") (internal quotation marks and citations omitted).

[20] *Libeau v. Fox* [hereinafter "*Libeau*"], 892 A.2d 1068, 1071 (Del. 2006); *see also Lowry*, 2020 WL 5587390, at *1, *4.

[21] *Libeau*, 892 A.2d at 1071 (citing *Libeau v. Fox*, 880 A.2d at 1057).

[22] *Lowry*, 2020 WL 5587390, at *1.

[23] *Id.*, at *4.

[24] *Libeau*, 892 A.2d 1068, 1071 (Del. 2006).

writing and for a reasonable period of time."[25] "The period of time will be deemed unreasonable if it is unlimited in duration."[26]

Here, the Waiver Agreement divided the sale proceeds from the Towson Home between Henckel and Evatt and established their future financial and other arrangements and obligations regarding the Beach House.[27] It provided that Evatt "will reside at [Beach House] for the foreseeable future," use his share of the Towson Home proceeds to repair the Beach House sunroom roof, and pay the ground rent for the Beach House and the cost of regular maintenance.[28] Evatt and Henckel agreed to split property taxes and the cost of major repairs for the Beach House equally.[29] The Waiver Agreement obligated Evatt to "make every attempt to save money with the goal of purchasing Mark Henckel's share of the Beach House as soon as he is financially able or both [Evatt and Henckel] agree to sell the Beach House."[30] If Evatt buys out Henckel's share of the Beach House or if it is

---

[25] *Lowry*, 2020 WL 5587390, at *4 (citing *Kuck v. Cropper*, 1978 WL 22465, at *3 (Del. Ch. Dec. 5, 1978)).

[26] *Id.* (internal quotation marks and citations omitted).

[27] Evatt A-8.

[28] *Id.,* ¶¶ 2-4, 8.

[29] *Id.,* ¶¶ 6-7.

[30] *Id.,* ¶ 10.

sold, he agreed to pay Henckel one-half of the Beach House's market or appraised value.[31]   Henckel agreed to "not force Bruce Evatt to sell the Beach House."[32]

To effectively waive partition rights, the Waiver Agreement must do so clearly.  Although it does not contain an explicit disclaimer of partition rights, I find the Waiver Agreement's provision precluding Henckel from forcing Evatt to sell the Beach House shows the parties' waiver of partition rights.  However, the Waiver Agreement fails to contain an exit mechanism by which Henckel could sell his interest in the Beach House under any circumstances – unless Evatt buys his share or agrees to the sale of the Beach House.  Because Evatt retains complete control over termination of the co-ownership for an unlimited time period, the waiver cannot be considered fair or equitable.  Evatt is obligated, under the Waiver Agreement, to "attempt to save money with the goal of purchasing . . . Henckel's share of the Beach House as soon as he is financially able," but the Waiver Agreement does not qualify when Evatt is "financially able" – and required – to purchase Henckel's share.  Henckel and Evatt both indicated that they want Evatt to buy out Henckel, but Evatt testified that he is currently unemployed and the buy-out price remains in dispute.[33]   Eighteen months following the Waiver Agreement's execution, the parties remain locked in an "unwholesome stalemate,"

---

[31] *Id.,* ¶ 11.

[32] *Id.*, ¶ 12.

7

with no end in sight.[34]   I conclude the waiver of partition rights in the Waiver Agreement is not limited to a reasonable duration and, therefore, constitutes an unreasonable restraint on alienation and is unenforceable.[35]

## III.   Conclusion

For the reasons set forth above, I find that the co-owners' waiver of partition rights is unenforceable because the restriction on partition is not reasonable in duration and fails to provide a reasonable mechanism for sale as an alternative to partition.   Accordingly, under 12 *Del. C.* §721 and §724, I recommend that the Court order the property partitioned.[36]  A supplemental order appointing a partition trustee to sell the Beach House shall be issued once this report is approved by the Court.  This is a final report and exceptions may be taken under Court of Chancery Rule 144.

/s/ Patricia W. Griffin
Master Patricia W. Griffin

---

[33] Trial Tr. 17:6-8; Trial Tr. 43:16-44:19.

[34] *See generally Libeau v. Fox*, 880 A.2d 1049, 1056 (Del. Ch.), *judgment entered,* (Del. Ch. 2005), *aff'd in part, rev'd in part,* 892 A.2d 1068 (Del. 2006) ("The statutory partition action is the practical means that Delaware uses to break these unwholesome stalemates.")

[35] Because I determine the waiver of partition rights is unenforceable as an unreasonable restraint on alienation, I do not address Henckel's argument that the Waiver Agreement is unenforceable due to duress and coercion.

[36] Recognizing that both parties indicated they wish to have Evatt buy out Henckel's share of the Beach House, I encourage them to continue to try and settle this matter, particularly before the supplemental order is issued appointing a partition trustee to sell the Beach House.