# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

BLUE VALLEY, LLC,        )
a Texas company,          )
                                    )
        Plaintiff,         )
                                    )
        v.             ) C.A. No. N20C-03-300 SKR CCLD
                                    )
JOHN KLEIN,             )
LENORA KLEIN and       )
CAMBRIDGE THERAPEUTIC  )
TECHNOLOGIES, LLC, a     )
Delaware company,        )
                                    )
        Defendants.     )

Submitted: May 17, 2023
Decided: July 31, 2023

*Upon Consideration of Plaintiff's Motion for Partial Summary Judgment*:

**GRANTED.**

John Harris, Esquire, and Harry Shenton IV, Esquire, of BERGER HARRIS LLP, Wilmington, Delaware, for Plaintiff Blue Valley, LLC.

John Klein, *Pro Se*, Tampa, Florida.

**RENNIE, J.**

# INTRODUCTION

Variations of this breach of contract action have persisted in this Court and federal court for years. In broad terms, Plaintiff Blue Valley, LLC ("Blue Valley") seeks to recover millions of dollars that it invested in Defendant John Klein's pharmaceutical drug packaging company, Cambridge Therapeutic Technologies ("CTT").

Depending on who you ask, this matter is either complicated – or benefitted – by the federal litigation that preceded it. Before Blue Valley filed this suit in Superior Court, seven other CTT investors, not including but similarly situated to Blue Valley, sued Mr. Klein in his personal capacity in the United States District Court for the District of Delaware (the "Federal Action") for statutory and common law fraud and material misrepresentation. The Federal Action proceeded to a three-day bench trial and culminated in a memorandum opinion (the "Federal Opinion") which found Mr. Klein liable on all counts.[1] The United States Court of Appeals for the Third Circuit affirmed the final judgment against Mr. Klein on May 25, 2022.[2]

Blue Valley has now moved for partial summary judgment on Counts II and III of its Amended Complaint filed in this Court. Those Counts allege

---

[1] *Adams v. Klein*, 2021 WL 4439658 (D. Del. Sept. 28, 2021).
[2] *Adams v. Klein*, 2022 WL 1658700, at *3 (3d. Cir. May 25, 2022).

that Mr. Klein signed a two-party Unit Purchase Agreement (the "UPA"), by which Blue Valley invested $7 million in CTT, in spite of Mr. Klein's knowledge that several of CTT's representations regarding its "Intellectual Property Rights" were materially false.[3] To that end, Blue Valley says it invested in CTT because of Mr. Klein's personal guarantee of indemnification under the UPA.[4] Even though he presented CTT as a sound investment choice, Mr. Klein allegedly never intended to make distributions or return Blue Valley's capital investment equal to the UPA purchase price.[5] Instead, Blue Valley alleges that Mr. Klein used its investment as "a personal slush fund."[6] Throughout its motion, Blue Valley argues that offensive collateral estoppel stemming from the Federal Action prevents Mr. Klein from relitigating the issue of his alleged material misrepresentations.

By his *pro se* filing in response, Mr. Klein concedes almost nothing and recasts what happened in the Federal Action. As best the Court can discern, his opposition centers around four arguments. First, he argues that the findings of the Federal Action were against CTT's predecessor entity ("CTT-

---

[3] *See* Plf.'s Op. Br. In Supp. Of its Mot. For Partial Summ. J. ("Plf.'s Mot.") at 1 (D.I. 103).
[4] *Id.* at 6.
[5] *Id.* at 7.
[6] *Id.* at 8.

3

NJ") and, therefore, have no preclusive effect in this litigation.[7]  Second, he offers an assortment of newly-raised "evidence" that attacks the District Court's findings.[8]  Third, he relies on extrinsic evidence to show that CTT's intellectual property was outside of the Blue Valley Investment.[9]  Fourth and finally, he contends that his material misrepresentations as to CTT's intellectual property rights are excused by Blue Valley's nine months of due diligence.[10]

The Court has carefully considered the parties' arguments and, for the reasons that follow, finds that Blue Valley's motion for partial summary judgment must be **GRANTED**.

### FACTUAL OVERVIEW

As mentioned, this matter concerns Blue Valley's interactions with Mr. Klein, who was the founder and CEO of CTT.[11]  Prior to mid-2016, CTT's operating entity was a New Jersey LLC.  CTT became a Delaware LLC in June 2016.[12]

---

[7] *See* Def.'s Resp. Op. Br. In Opp. Of Partial Summ. J. ("Def.'s Resp.") at 5-6, 10, 14 (D.I. 105).

[8] *Id.* at 6-10.

[9] *See id.*, Ex. B.

[10] *Id.* at 5, 11, 13-14.

[11] Pl.'s Am. Compl., Ex. D ("Indemnification Agreement") at 1 (D.I. 76).

[12] *See generally* Pl.'s Compl., Ex. C ("Operating Agreement") (D.I. 76).

4

Mr. Klein served as CTT's CEO from 2011 until his termination in December 2017.[13] In his capacity as CEO, he represented to numerous investors that CTT was in the business of distributing two or more generic prescription drugs combined in a single package ("Compliance PACs").[14] Mr. Klein stated that these Compliance PACs would primarily be distributed from doctors' offices, which was a novel feature of his business.[15] He also claimed that CTT had fully developed its first Compliance PAC, and that CTT owned one New Drug Application ("NDA"), NDA 50-824, which was a gastroenterology product that treated peptic ulcers.[16] In addition to this NDA, Mr. Klein represented that CTT owned four valuable Investigational New Drugs ("INDs") that were approved and ready for commercialization.[17]

After merging CTT into a Delaware LLC, Mr. Klein began negotiating an investment with the originating members of Blue Valley in 2016.[18] The parties executed the UPA in September of that year, whereby Blue Valley purchased 9,111 Class A Units of CTT stock for $7 million.[19] Additionally,

---

[13] Pl.'s Am. Compl., Ex. L ("Klein Dep. Tr.") at 256:6-14 (D.I. 77).
[14] Pl.'s Am. Compl., Ex. CC ("CTT Investment Presentation Slides") at 9, 12-14 (D.I. 81).
[15] Id. at 15 ("CTT has just created a new revenue stream that wasn't previously available to [health-care] providers.").
[16] Pl.'s Am. Compl., Ex. B ("Disclosure Schedule") at 3 (D.I. 76).
[17] Id.
[18] Klein Dep. Tr. at 256:6-14.
[19] Pl.'s Am. Compl., Ex. A ("UPA") at 4 (D.I. 76).

Blue Valley and Mr. Klein entered into an Indemnification Agreement, whereby Mr. Klein promised that "[a]s an inducement to [Blue Valley] to purchase the Class A Units, and as a condition to such purchase, [Mr. Klein would personally] indemnify Blue Valley immediately for any and all liabilities . . . arising directly or indirectly out of, or relating to, any breach of, or misrepresentation, in the representations and warranties contained in Section 3.9 of the UPA."[20]

Section 3.9 incorporated Schedule 3.9 of the UPA, which was "a comprehensive list of all assets that CTT possesse[d] that are necessary to conduct its business," including CTT's intellectual property rights.[21] Schedule 3.9 explicitly stated that CTT "possesse[d] the full ownership interest in, and there [were] no liens on" five intellectual properties consisting of NDA 50-824 and four INDs.[22]

As it turns out, none of that was true. NDA-50-824 was actually owned by Gastro-Entero Logic LLC,[23] in which Mr. Klein owned a personal interest that paid him roughly $1 million in royalties over five years.[24] The other four

---

[20] Indemnification Agreement at 1.
[21] UPA at 7.
[22] Disclosure Schedule at 3.
[23] Pl.'s Am. Compl., Ex. U ("Federal Plaintiffs' Interrog. Resp.") at 12 (D.I. 78); *see also* Official Transcript ("Oral Arg. Tr.") at 44:10-14; 47:9-18.
[24] *See* Pl.'s Am. Compl., Ex. Y ("Klein GEL Partnership Schedule K-1 from 2012-2016") (D.I. 78).

IND assets were owned by DAVA Pharmaceuticals ("DAVA"), another company for which Mr. Klein previously worked.[25] Mr. Klein now admits that the INDs were DAVA intellectual property all along.[26]

But even if the INDs had been given to CTT, they were of no value anyway. DAVA never developed the INDs into NDAs after filing initial letters with the FDA and did not invest any money into the process.[27] In fact, as Mr. Klein's partner at DAVA acknowledged, the INDs "were worthless."[28]

And, last but not least, Mr. Klein did not use the investment funds for CTT business. He used them to fund summer rentals in the Hamptons, pay off property taxes on his mansion, and wire money to previously-undisclosed CTT investors.[29]

Now controlled by a "disposition" officer, CTT is mired in litigation and investigations, rendering Blue Valley's investment worthless.

## PROCEDURAL HISTORY

Blue Valley initiated this action in March 2020, seeking recovery of its original $7 million investment through the Indemnification Agreement. Three

---

[25] Klein Dep. Tr. at 72:3-20; 85:10-25.

[26] *Id.*

[27] Pl.'s Am. Compl., Ex. G ("Moezina Dep. Tr.") at 108:5-25 (D.I. 76).

[28] *Id.*

[29] *See* Pl.'s Am. Compl., Exs. W ("Klein 2016 Bank Reconciliation Email") (D.I. 78), JJ ("Summary of Klein Personal Expenses") (D.I. 82), KK ("Request for Mr. Klein's Bank Reconciliation") (D.I. 82).

years later, it filed this motion for partial summary judgment on Counts II and III of its Amended Complaint.

Count II asserted a breach of contract claim against CTT for breaching the express warranties in Section 3.9 of the UPA. In May 2023, however, CTT conceded liability on Count II and the Court entered a Stipulated Consent Order and Final Judgment jointly filed by the parties.[30] The matter that remains for disposition, set forth in Count III, is a breach of contract claim against Mr. Klein, in his personal capacity, for breaching the Indemnification Agreement.

## STANDARD OF REVIEW

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law."[31] Blue Valley bears the initial burden to show that no genuine issue of material fact remains for trial.[32] If met, the burden shifts to Mr. Klein.[33] The Court "will

---

[30] *See* D.I. 112.
[31] Super. Ct. Civ. R. 56(c).
[32] *Moore v. Sizemore*, 405 A.2d 679, 680 (Del. 1979).
[33] *See id.*

8

accept as established all undisputed factual assertions, made by either party, and accept the non-movant's version of any disputed facts."[34]

## ANALYSIS

As discussed above, Blue Valley alleges that Mr. Klein breached the Indemnification Agreement contained within the UPA. The crux of Blue Valley's motion is a request that the Court apply offensive collateral estoppel to bar relitigation of CTT's purported ownership of NDA 50-824. Offensive collateral estoppel is, indeed, a rare remedy that the Court applies with caution; it goes without citation that excusing a plaintiff of its burden of proof is no small task. Here, however, the Court need not employ an offensive collateral estoppel analysis because Blue Valley has carried its summary judgment burden of proof on the merits.

### A. The UPA Is Unambiguous, and Mr. Klein's Offering of Extrinsic Evidence is Barred by the Parol Evidence Rule.

Preliminarily, the Court will address Mr. Klein's use of extrinsic evidence, through which he seeks to demonstrate that the NDA and INDs were outside of Blue Valley's investment. For example, Mr. Klein now asks the Court to consider:

> [A]n email [which] shows that NDA 50-824 was not included in [CTT] and attached to the email is the assignment of rights dated January 30, 2014 assigning to

---

[34] *Merrill v. Crothall-American, Inc.*, 606 A.2d 96, 99-100 (Del. 1992).

Klein from DAVA pharmaceuticals the rights of [the] four NDAs. . . . The email and assignment [sic] was blocked by [Blue Valley's] attorney in the [federal] case because they claim [sic] they didn't review in discovery, the judge granted their request, however, [sic] IN DEFENSE OF THIS ALLEGATION IT WILL BE SUBMITTED HERE THUS PROVING THEIR RELIANCE ON THE [federal] CASE CAN BE DISPUTED AND THE ALLEGATION PROVEN FALSE [sic].[35]

This email is dated May 25, 2016, nearly four months before the UPA was executed.

Delaware honors the parol evidence rule,[36] which provides that "[w]hen two parties have made a contract and have expressed it in a writing to which they have both assented as to the complete and accurate integration of that contract, evidence . . . of antecedent understandings and negotiations will not be admitted for the purpose of varying or contradicting the writing."[37]

In contract disputes, ambiguity is often a threshold challenge for summary judgment motions.[38] Delaware follows the "objective" theory of contracts, meaning a contract is construed as understood by a reasonable third party.[39]

---

[35] Def.'s Resp. at 7 (emphasis in original).
[36] *Rhone-Poulenc Basic Chem. Co. v. Am. Motorists Ins. Co.*, 616 A.2d 1192, 1196 (Del. 1992).
[37] *Doe v. Cedars Academy, LLC*, 2010 WL 5825343, at *5 (Del. Super. Oct. 27, 2010).
[38] *Massachusetts Mutual Life Ins. Co. v. Certain Underwriters at Lloyd's of London*, 2014 WL 3707989, at *4 (Del. Super. June 6, 2014).
[39] *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1159 (Del. 2010).

To ensure compliance with the parol evidence rule, Delaware courts give priority to the parties' intentions as reflected within the four corners of the agreement when interpreting a contract.[40] So, as directed by the rule, the Court must first look to the Indemnification Agreement itself (the text within the "four corners") to determine if it unambiguously reflects the parties' intent with respect to indemnity. The Court will read the agreement as a whole, giving each provision effect so as not to render any part of the contract meaningless, illusory, or superfluous.[41]

When the contract is unambiguous, the Court enforces the plain meaning of its terms and provisions.[42] If the agreement is clear, by definition it speaks for itself, so there is no reason to look for the parties' subjective expectations.[43] If, however, there is more than one reasonable interpretation, a provision is ambiguous.[44] But, a provision is not ambiguous just because the parties disagree on its proper construction; nor are unreasonable interpretations considered.[45]

---

[40] *Comrie v. Enterasys Networks, Inc.*, 837 A.2d 1, 13 (Del. Ch. 2003) (internal citations omitted).
[41] *Osborn*, 991 A.2d at 1160.
[42] *Id.*
[43] *Massachusetts Mutual Life Ins. Co.*, 2014 WL 3707989, at *5.
[44] *AT&T Corp. v. Lillis*, 953 A.2d 241, 252 (Del. 2008).
[45] *Id.*

Here, the Indemnification Agreement unequivocally states that Mr. Klein would personally indemnify Blue Valley "for any and all liabilities . . . arising directly or indirectly out of, or relating to, any breach of, or misrepresentation, in the representations and warranties contained in Section 3.9 of the UPA."[46] The UPA makes no mention of the "true fact," as Mr. Klein puts it, that Blue Valley knew CTT did not own the intellectual property. Instead, Section 3.9 of the UPA incorporates Schedule 3.9, whereby Mr. Klein represented that CTT owned NDA 50-824 and four INDs. That is as unambiguous as it gets. Accordingly, Mr. Klein's extrinsic evidence is barred by the parol evidence rule.

### B. Mr. Klein Breached the UPA.

Generally, the elements of a breach of contract claim are: (i) a contractual obligation between two parties, (ii) a breach, and (iii) damages.[47] Insofar as the breach of contract claim is concerned here, Mr. Klein agrees with Blue Valley on two points: first, that he and Blue Valley entered into a valid contract when they signed the UPA,[48] and second, that Blue Valley performed

---

[46] Indemnification Agreement at 1.
[47] *Vituli v. Carrols Corp.*, 2015 WL 5157215, at *3 (Del. Super. May 1, 2015).
[48] *See* Def.'s Resp. at 15 ("[Blue Valley] argues that the UPA is a valid and enforceable agreement, and it is.").

12

under the UPA when it invested $7 million into CTT.[49]  Unsurprisingly, that is where the congruity ends.  Mr. Klein contends that *he* did not breach the UPA, because Blue Valley allegedly invested with the understanding that CTT did not own NDA 50-824 and the INDs.[50]

The problem with this position is that it is belied by the unambiguous language of the UPA.  In simple terms, the UPA says "if X, then Y": if CTT did not own NDA 50-824, then Mr. Klein must indemnify Blue Valley for its investment.  And, as Mr. Klein admitted during the opening seconds of oral argument, CTT never owned NDA 50-824:

> [MR. KLEIN]: Your Honor, all of the facts here, but one, are disputed.  Number one, the fact that's not disputed is that [CTT] did not own [NDA] 50-824. . . .
> [THE COURT]: Wait.  You're saying – you're acknowledging, you're conceding – that CTT did not own [NDA] 50-824?
> [MR. KLEIN]: Yes, Your Honor, you are correct.
> . . .
> [THE COURT]: Let me make sure I understand what you're saying, so we don't go down a rabbit hole.  You've initially conceded that [NDA] 50-824 was not owned – is not owned – by CTT, right?
> [Mr. KLEIN]: That is absolutely correct, Your Honor.[51]

---

[49] *Id.* at 9 ("The case does center around [Blue Valley]'s $7 million investment into [CTT].").
[50] *Id.* at 10.
[51] Oral Arg. Tr. 24:12-16; 25:1-5, 22-23; 26:1-7.

This, alone, ends the inquiry. Even if Mr. Klein's claim that he did not "read [Section] 3.9 specifically"[52] before signing the Indemnification Agreement were true, it does not excuse his continued failure to indemnify Blue Valley after he clearly breached the UPA.

Sophisticated parties represented by counsel during contract negotiations, like Mr. Klein, can and should make their own judgments about the risk they bear in an agreement. When parties have ordered their affairs voluntarily through a binding contract, Delaware law is strongly inclined to respect their agreement, and "will only interfere upon a strong showing that dishonoring the contract is required to vindicate a public policy interest even stronger than freedom of contract."[53]

Mr. Klein has made no such showing. He breached the UPA, so his obligation under the Indemnification Agreement is triggered.[54] The Court must enforce it here.

---

[52] Oral Arg. Tr. 40:14.

[53] *Libeau v. Fox*, 880 A.2d 1049, 1056-57 (Del. Ch. 2005), *aff'd in part, rev'd in part on other grounds*, 892 A.2d 1068 (Del. 2006).

[54] Because the finding that Mr. Klein breached the UPA ends the analysis, the Court will not address Mr. Klein's arguments regarding Blue Valley's due diligence.

## CONCLUSION

For the reasons discussed above, Blue Valley's motion for partial summary judgment is **GRANTED**. Counsel for Blue Valley shall submit a proposed order to this effect by August 11, 2023.

**IT IS SO ORDERED.**

_____
Sheldon K. Rennie, Judge